COMMONWEALTH *vs.* MARSHA J. PLANK.

Suffolk. May 7, 1979. — July 5, 1979.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Open and Gross Lewdness and Lascivious Behavior. Public Entertainment. Obscenity. Constitutional Law,* Obscenity, Public entertainment.

At the trial of a defendant charged with dissemination of obscene matter in violation of G. L. c. 272, § 29, evidence that the defendant was observed wearing a negligee, open in front revealing her breasts, pubic area, and buttocks, while dancing on a stage at a club, and that, during the dance, her hands touched her breasts and her pubic area three or four times was not sufficient to warrant a conclusion that the dance depicted sexual conduct in a patently offensive way, as required by c. 272, § 31. [467-470]

INDICTMENT found and returned in the Superior Court on January 13, 1977.

The case was heard by *Lee,* J., a District Court judge sitting under statutory authority.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Kenneth H. Tatarian* for the defendant.

*Michael J. Traft,* Assistant District Attorney (*John A. Mendlesohn,* Special Assistant District Attorney, with him) for the Commonwealth.

BRAUCHER, J. This is another in a series of prosecutions relating to nude dancing at the Squire Club (club) in Revere. See *Commonwealth* v. *Sees,* 374 Mass. 532 (1978);

*Revere* v. *Aucella,* 369 Mass. 138 (1975), appeal dismissed sub nom. *Charger Invs., Inc.* v. *Corbett,* 429 U.S. 877 (1976). The defendant, a dancer at the club, waived jury trial and was convicted under G. L. c. 272, § 29, of disseminating obscene matter. We hold that the evidence did not warrant a conclusion that the dance depicted sexual conduct in a "patently offensive" way, as required by G. L. c. 272, § 31. We therefore reverse the conviction.

The defendant was arrested after performing at the club on the evening of August 9, 1974. The following day a complaint was issued charging her with open and gross lewdness in violation of G. L. c. 272, § 16. By letter dated May 20, 1975, the defendant requested a continuance pending our decision in the *Aucella* case.[1] Later in 1975 we held in that case that § 16 was unconstitutional as applied to dancing at the club. *Revere* v. *Aucella,* 369 Mass. 138, 142-143 (1975). The defendant was never tried on the § 16 complaint. She was indicted on January 13, 1977, for disseminating obscene matter, and was convicted in June, 1977. Payment of a $250 fine was stayed pending appeal, and we transferred the case here on our own motion.

The only witnesses at trial were the two arresting officers. We summarize their testimony. Two Revere police officers in uniform entered the club about 9:25 P.M. on August 9, 1974, and saw the defendant and two other women dancing on the stage. The defendant was wearing a "babydoll see-through negligee," open in front, revealing her breasts, pubic area and buttocks. She was dancing and "gyrating" to music from a jukebox. One of the officers watched her for about five minutes, and during that time saw her hands "touch her bust area and also her pubic areas" three or four times. About seventy to one hundred people were present.

---

[1] We allow the Commonwealth's motion to expand the record on appeal to include that letter.

The defendant argues that she was denied her constitutional right to a speedy trial and presents a number of constitutional and statutory issues relating to the obscenity statute, G. L. c. 272, §§ 29, 31, as appearing in St. 1974, c. 430, §§ 9, 12. In the view we take, we need decide only whether the evidence warranted a conclusion that the dance depicted sexual conduct "in a patently offensive way," as required by the definition of "obscene" in § 31.

The defendant, it was charged, "did disseminate certain obscene matter, well knowing it to be obscene, to wit: did exhibit and display an obscene live performance and dance, well knowing such performance and dance to be obscene." Section 29 provides for the punishment of a person who "disseminates any matter which is obscene, knowing it to be obscene."

Definitions are supplied by G. L. c. 272, § 31, as appearing in St. 1974, c. 430, § 12. "Disseminate" may mean to "exhibit or display." "Knowing" refers to "a general awareness of the character of the matter." A "live performance," including "dances," is "matter." Matter is "obscene" if taken as a whole it meets each of three standards.[2] *Commonwealth* v. *707 Main Corp.*, 371 Mass. 374, 384-386 (1976). We are concerned here with the second standard, that the matter depict "sexual conduct in a patently offensive way." "Sexual conduct" includes "any touching of the genitals, pubic areas or buttocks of the human male or female, or the breasts of the female, whether alone or between members of the same or opposite sex or between humans and animals."[3]

---

[2] "(1) [A]ppeals to prurient interest of the average person, applying the contemporary standards of the commonwealth;

"(2) depicts or describes sexual conduct in a patently offensive way; and

"(3) lacks serious literary, artistic, political or scientific value."

[3] "Sexual conduct" means "human masturbation, sexual intercourse actual or simulated, normal or perverted, or any touching of the genitals, pubic areas or buttocks of the human male or female, or

The "patently offensive" standard stems from *Miller* v. *California*, 413 U.S. 15, 19 (1973), where a majority of the Court "agreed on concrete guidelines to isolate 'hard core' pornography from expression protected by the First Amendment." One of the guidelines was "whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law." *Id.* at 24. The Court gave "a few plain examples" of what could be included in such a definition. *Id.* at 25. Those examples did not include the "touching" provision quoted above, but later decisions made it clear that the *Miller* examples were not intended to be exhaustive. *Ward* v. *Illinois*, 431 U.S. 767, 773 (1977). *Jenkins* v. *Georgia*, 418 U.S. 153, 160-161 (1974). *Hamling* v. *United States*, 418 U.S. 87, 114 (1974).

In *Commonwealth* v. *707 Main Corp.*, 371 Mass, 374, 385 (1976), we held that in applying the "patently offensive" standard "triers of fact must decide whether a Massachusetts citizen of average susceptibilities would be repelled by depictions in the matter at issue." In a companion case we said that the statutory definition of "sexual conduct" "includes only 'hard core' sexual conduct as described in *Miller* v. *California*, 413 U.S. 15, 25 (1973), and *Jenkins* v. *Georgia*, 418 U.S. 153, 160 (1974)." *District Attorney for the N. Dist.* v. *Three Way Theatres Corp.*, 371 Mass. 391, 393 (1976). We did not there focus on the "touching" provision, which plainly covers some conduct that is not necessarily "hard core" sexual conduct. In New Hampshire, the court felt compelled by constitutional considerations to read an identical "touching" provision out of the statute. *State* v. *Manchester News Co.*,

the breasts of the female, whether alone or between members of the same or opposite sex or between humans and animals, any depiction or representation of excretory functions, any lewd exhibitions of the genitals, flagellation or torture in the context of a sexual relationship. Sexual intercourse is simulated when it depicts explicit sexual intercourse which gives the appearance of the consummation of sexual intercourse, normal or perverted."

118 N.H. 255, 258-260, appeal dismissed, 439 U.S. 949 (1978).

The present case does not require such drastic surgery. If we assume that the defendant engaged in statutory "sexual conduct" by touching herself, our statute requires a further finding that the conduct was depicted "in a patently offensive way." Contrast *D & J Enterprises, Inc.* v. *Attorney Gen.*,        R.I.     ,   -    (1979),[a] where the statute defined certain conduct as "patently offensive sexual conduct," and was therefore held constitutionally overbroad. The decision of the trier of fact on the issue of patent offensiveness is not unreviewable; "it is always appropriate for the appellate court to review the sufficiency of the evidence." *Smith* v. *United States*, 431 U.S. 291, 305-306 (1977).

Where the matter at issue is a film or a book and is in evidence, it may itself be sufficient evidence to warrant a finding of patent offensiveness; the trier of fact may draw on his own knowledge of community standards. See *Commonwealth* v. *Trainor*, 374 Mass. 796, 799-800 (1978). A live performance such as a dance, on the other hand, cannot ordinarily be placed directly in evidence. The record before us includes no tangible evidence such as pictures; like us, the trier of fact had to rely on the perceptions of the two police witnesses. See *Newark* v. *Humphres*, 94 N.J. Super. 384, 391-392 (1967). Their testimony left a good deal to the imagination.

In our view, the issue of patent offensiveness is to be decided in context. So far as appears, the dance took place on stage in a "club" before willing adult patrons. The dancer did not mingle with other entertainers or with patrons. In such a setting, "nudity alone is not enough to make material legally obscene under the *Miller* standards." *Jenkins* v. *Georgia*, 418 U.S. 153, 161 (1974). See *Commonwealth* v. *Sees*, 374 Mass. 532, 537-538 (1978); *Revere* v. *Aucella*, 369 Mass. 138, 143 (1975). We do not think the additional evidence that the dancer touched herself in places mentioned in the statute was sufficient

---

[a] 401 A.2d 440, 445 (1979).

to warrant a finding that an average citizen of Massachusetts today would be repelled.

The judgment is reversed and the finding of guilty is set aside. A judgment of not guilty is to be entered.

*So ordered.*