COMMONWEALTH vs. UNITED BOOKS, INC.

Worcester. April 6, 1983. — August 15, 1983.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Obscenity,* Community standard, Expert testimony, Knowing dissemination of obscene matter. *Due Process of Law,* Obscenity. *Constitutional Law,* Freedom of speech and press, Obscenity. *Evidence,* Offer of proof. *Witness,* Expert: qualification. *Practice, Criminal,* Motion in limine, Instructions to jury.

This court reaffirmed its prior holdings that the definition of obscenity in G. L. c. 272, § 31, as in effect at the time of a criminal trial, was not unconstitutionally vague under either the Massachusetts Declaration of Rights or the First Amendment to the Federal Constitution [891-893], and that the Commonwealth was not required to introduce extrinsic evidence of Statewide standards, but rather was entitled to rely on the material itself in making its proof of obscenity [893]. ABRAMS, J., concurring.

At the trial of a complaint charging dissemination of obscene matter in violation of G. L. c. 272, § 29, the defendant's proof on the issue whether the definition of obscene matter contained in G. L. c. 272, § 31, as in effect prior to St. 1982, c. 603, § 3, was unconstitutionally vague for lack of any contemporary standards of the Commonwealth did not meet the defendant's burden of showing that Statewide standards as to what is "patently offensive" do not exist. [891-893]

In a criminal proceeding for dissemination of obscene matter in violation of G. L. c. 272, § 29, the Commonwealth must prove only that the defendant had knowledge of the contents and general character, rather than knowledge of the legal obscenity, of the materials disseminated. [893-894]

The defendant at a criminal trial was not required to make an offer of proof following the exclusion of certain proffered expert testimony, where the judge had excluded this testimony on the basis of his determination that the putative expert was not qualified. [894-895]

At the trial of a complaint charging dissemination of an obscene coin-operated film, it was reversible error for the judge to refuse to allow testimony by the defendant's prospective expert witness as to the artistic value of the film, where the prospective witness's undisputed testimony on voir dire, if believed, established that he was qualified as

an expert on erotic art, and where the judge gave no indication that he disbelieved the voir dire testimony. [894-897]

Although the judge at the trial of a complaint charging dissemination of an obscene coin-operated film erred in granting a motion in limine by the Commonwealth requiring the defendant to refrain from arguing to the jury that the film was available only to consenting adults, the defendant was not prejudiced by the inability to refer to "consenting adults" where, in defense counsel's closing argument, the jury were adequately apprised of the context in which the film was available, as relating to their determination whether it was patently offensive. [898-900]

There was no merit to the contention by the defendant at a trial for dissemination of an obscene coin-operated film that the judge erred by requiring that the defendant refrain from referring to an entertainment license granted to it by municipal authorities for showing coin-operated films on its premises, inasmuch as the fact of the license was presented in the parties' stipulation which was read to the jury. [900]

At a criminal trial the judge's charge to the jury, considered as a whole, adequately stated the elements of proof required for a conviction of disseminating obscene matter. [900]

At the trial of a complaint charging dissemination of an obscene coin-operated film, there was no error in the judge's refusal to instruct the jury, explicitly, as requested by the defendant, that the film was presumptively protected by the First Amendment to the United States Constitution until proved to be obscene. [900-901]


COMPLAINT received and sworn to in the Central Worcester Division of the District Court Department on January 22, 1982.

The case was tried before *Kelleher*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Regina L. Quinlan*, (*Marion L. Polzella* with her) for the defendant.

*Lynn Morrill Turcotte*, Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J.   After a jury trial, the defendant was convicted of disseminating obscene matter in violation of G. L. c. 272, § 29, and fined $5,000.[1]   The conviction was

---

[1] At the time of the defendant's trial, G. L. c. 272, § 29, as appearing in St. 1974, c. 430, § 9, provided: "Whoever disseminates any matter which is obscene, knowing it to be obscene, or whoever has in his possession any

based on a coin-operated film, "Seak's Fullfillment," which was available for viewing at the defendant's store. The defendant appealed and we granted the application for direct appellate review. On appeal, the defendant contends that the complaint should have been dismissed because G. L. c. 272, § 29, is unconstitutional under arts. 1, 12, and 16 of the Declaration of Rights of the Massachusetts Constitution, and the First Amendment to the United States Constitution. The defendant also objects to several of the judge's evidentiary rulings, and to portions of the jury instructions. We conclude that the defendant's motion to dismiss the complaint was properly denied, but that the defendant must have a new trial because of the judge's refusal to allow the defendant's expert to testify about the artistic value of the film.

At the time of the defendant's trial, G. L. c. 272, § 31, as amended through St. 1977, c. 917, §§ 4-6, provided that "matter is obscene if taken as a whole it (1) appeals to the prurient interest of the average person applying the contemporary standards of the commonwealth;[2] (2) depicts or describes sexual conduct in a patently offensive way; and (3) lacks serious literary, artistic, political or scientific value." We have held that "[a]lthough G. L. c. 272, § 31, expressly applies the Statewide standard only to questions of prurience, the Legislature clearly intended that the Commonwealth standard should apply also to questions of patent offensiveness." *Commonwealth* v. *707 Main Corp.*, 371 Mass. 374, 385 (1976). See *District Attorney for the*

---

matter which is obscene, knowing it to be obscene, with the intent to disseminate the same, shall be punished by . . . a fine of not less than one hundred dollars nor more than five thousand dollars . . . ."

The statute was rewritten by St. 1982, c. 603, § 3, to provide for "a fine of not less than one thousand nor more than ten thousand dollars for the first offense, not less than five thousand nor more than twenty thousand dollars for the second offense, or not less than ten thousand nor more than thirty thousand dollars for the third and subsequent offenses."

[2] The statute was amended through St. 1982, c. 603, § 7, to read, "applying the contemporary standards of the county where the offense was committed."

*N. Dist.* v. *Three Way Theatres Corp.*, 371 Mass. 391, 392-393 (1976).

1. The defendant first argues that the definition of "obscene matter" in § 31 is unconstitutionally vague because there are no contemporary standards of the Commonwealth. In particular, the defendant focuses on the "patently offensive" requirement. Since § 31 was based on *Miller* v. *California*, 413 U.S. 15, 24-25, 33-34 (1973), we see no merit in the defendant's claim under the First Amendment. See *Commonwealth* v. *Trainor*, 374 Mass. 796, 798 (1978). In *Commonwealth* v. *707 Main Corp.*, *supra* at 383, we held that the statute "is not unconstitutionally vague in its proscription of dissemination of obscene matter, because its definitions of '*obscene*' *matter* and 'sexual conduct' . . . provide reasonably ascertainable standards of guilt" (emphasis supplied). See *District Attorney for the N. Dist.* v. *Three Way Theatres Corp.*, *supra* at 394; *Commonwealth* v. *Thureson*, 371 Mass. 387, 389 (1976). We again rejected a claim that the Massachusetts Constitution requires "greater specificity" in the statutory definition of obscenity in *Commonwealth* v. *Trainor*, 374 Mass. 796, 798-799 (1978). See *Bunker Hill Distrib., Inc.* v. *District Attorney for the Suffolk Dist.*, 376 Mass. 142, 145-146 (1978).

However, in *Commonwealth* v. *Trainor, supra* at 800, we left open "resolution of any challenge to the statute by proof that there is no such thing as . . . 'contemporary standards of the commonwealth' . . . . [I]f such standards do not exist, the statute must fail for unconstitutional vagueness." The defendant argues that there are no such standards because reaction to given material differs with viewer attitudes depending on such factors as sex, age, occupation, education, and life-style as well as on the setting within the community in which the material is available. In addition, the defendant notes that public tolerance of material shifts over time.

In *Commonwealth* v. *Trainor, supra* at 800, we rejected a similar challenge, concluding that "[t]he appellants have

not met their heavy burden of demonstrating the un-
constitutionality of the Commonwealth's obscenity statutes.
We are not persuaded that there is no rational basis for the
Legislature to conclude that there are ascertainable State-
wide standards, even though the citizens of the Com-
monwealth differ from each other in numerous ways, in-
cluding upbringing, place of residence, age, education,
religion, and sex." We take this language to mean that
proof that there are no Statewide standards of patent offen-
siveness requires more than the defendant's bare allegations
here that attitudes vary with individual differences among
viewers.

The setting in which the material is available is relevant
to the question of patent offensiveness. In *Commonwealth
v. Plank*, 378 Mass. 465, 469 (1979), discussing nude danc-
ing, we stated that "the issue of patent offensiveness is to be
decided in context." However, this does not indicate that
Statewide standards do not exist, but rather that Statewide
standards vary uniformly depending on the context in
which the material is available. It is not unusual for the
legal reasonableness of a defendant's conduct to depend on
the circumstances in which the conduct occurred. Similar-
ly, the fact that public tolerance shifts over time does not in
itself show that there are no Statewide standards, so long as
public tolerance shifts uniformly. The defendant has not
made any arguments, other than those rejected in *Trainor*,
to show that shifts in tolerance, if any, are not Statewide.

We reject the defendant's argument that differing ver-
dicts on numerous complaints against it involving allegedly
comparable films reveal that there are no Statewide stand-
ards. See *Smith v. United States*, 431 U.S. 291, 309 (1977).
Consistent verdicts in prosecutions under the same statute
are not required, nor do we accept the defendant's allega-
tion that all the so called "adult" movies shown at its store
were comparable. Moreover, several factors may influence
a jury's verdict, such as the knowledge requirement of
G. L. c. 272, § 29.

We believe that our prior decisions establish that the definition of obscenity in G. L. c. 272, § 31, is not unconstitutionally vague under the Declaration of Rights or the First Amendment, and we once again "see no reason to change that conclusion at this time." *Commonwealth* v. *Trainor*, 374 Mass. 796, 799 (1978). As to the issue left open in *Trainor*, we find the defendant's proof insufficient to meet their "heavy burden" of showing that Statewide standards do not exist.[3]

We reaffirm our holding that the Commonwealth need not introduce extrinsic evidence of Statewide standards, but rather can rely on the material itself to prove that the material is obscene. *Commonwealth* v. *Trainor*, *supra*, and cases cited. The practice does not unconstitutionally relieve the Commonwealth of its burden of proof. See *District Attorney for the N. Dist.* v. *Three Way Theatres Corp.*, 371 Mass. 391, 394 (1976), citing *Kaplan* v. *California*, 413 U.S. 115, 121 (1973). Nor does it allow the jury to make findings not supported by the evidence. "[T]he trier of fact may draw on his own knowledge of normative views in his own community in applying statutorily prescribed community standards." *District Attorney for the N. Dist.* v. *Three Way Theatres Corp.*, *supra*.

2. The defendant's contention that we should construe § 29 to require knowledge of the legal obscenity of the materials disseminated is also quickly decided. We have al-

---

[3] The defendant also claims that the statute is vague as applied to it, although it does not develop this argument in its brief. The statute was vague as applied if it did not provide the defendant with notice that "Seak's Fullfillment" was obscene. See *Commonwealth* v. *Walter*, 388 Mass. 460, 465 (1983); *Aristocratic Restaurant of Mass., Inc.* v. *Alcoholic Beverages Control Comm'n (No. 2)*, 374 Mass. 564, 567-568 (1978). In light of our holding that the statutory definition of "obscene" matter is not unconstitutionally vague, the fact that "Seak's Fullfillment" unquestionably depicted hard core sexual conduct as defined in § 31 disposes of any contention that the statute was vague as applied. We note that the judge correctly charged the jury, based on *Commonwealth* v. *Trainor*, 374 Mass. 796, 800 (1978), that "[i]f you cannot determine the views of the average citizen of this Commonwealth as a whole, you cannot find the defendant guilty."

ready rejected this argument, and held that the Commonwealth must prove only that the defendant had knowledge of the contents and general character of the material. *Commonwealth* v. *Rosenberg*, 379 Mass. 334, 338-339 (1979). *Commonwealth* v. *Trainor*, 374 Mass. 796, 800-801 (1978). *Commonwealth* v. *Thureson*, 371 Mass. 387, 389-390 (1976). See *Hamling* v. *United States*, 418 U.S. 87, 120-123 (1974). General Laws c. 272, § 31, as appearing in St. 1974, c. 430, § 12, defines "knowing" for purposes of § 29 as "a general awareness of the character of the matter." The statutory definition fully comports with Federal and State constitutional due process requirements. *Hamling* v. *United States, supra* at 123. *Commonwealth* v. *Trainor, supra* at 801. *Commonwealth* v. *707 Main Corp.*, 371 Mass. 374, 383 (1976).

3. We now turn to the defendant's objections to the conduct of its trial. The defendant first argues that the judge erred in refusing to allow the defendant's expert, Professor Charles Blinderman, to testify. Defense counsel stated that Professor Blinderman's testimony was offered as to contemporary community standards and as to the question of the serious artistic, social, political, and scientific value of the film. The record indicates that the judge's ruling was based on his view that Professor Blinderman was not qualified as an expert in either area. Although the focus of discussion just prior to the ruling was on Professor Blinderman's qualifications to testify as to contemporary Commonwealth standards, the judge ruled that "I am not going to allow Professor Blinderman to testify in this case," and defense counsel had clearly stated that Professor Blinderman's testimony was also offered as to serious artistic, social, political, and scientific value.

At the outset, we reject the Commonwealth's argument that the defendant cannot successfully appeal the exclusion of Professor Blinderman's testimony because it did not make an offer of proof as to his testimony. "The failure to make an offer of proof *when it is required* is fatal" (emphasis supplied). *Commonwealth* v. *Hubbard*, 371 Mass. 160, 174 (1976), and cases cited. When testimony is excluded based

on the judge's determination that the putative expert is not qualified, no offer of proof is required. *Newton Girl Scout Council, Inc.* v. *Massachusetts Turnpike Auth.*, 335 Mass. 189, 199 (1956), and cases cited.

Both this court and the United States Supreme Court have recognized that testimony by a qualified expert is relevant and important to a defense that material is not obscene. *Kaplan* v. *California*, 413 U.S. 115, 121 (1973) (defense should be free to introduce appropriate expert testimony). *Commonwealth* v. *Trainor*, 374 Mass. 796, 802 (1978). Thus in *Kaplan, supra,* the Court referred with approval to Justice Frankfurter's concurring opinion in *Smith* v. *California*, 361 U.S. 147, 164-165 (1959), discussing "the right of one charged with obscenity — a right implicit in the very nature of the legal concept of obscenity — to enlighten the judgment of the . . . jury . . . regarding the prevailing literary and moral community standards and to do so through qualified experts . . . . [T]o exclude such expert testimony is in effect to exclude as irrelevant evidence that goes to the very essence of the defense and therefore to the constitutional safeguards of due process." Moreover, the fact that the Commonwealth carries its burden of proof of obscenity by introducing the material alone, militates in favor of allowing a defendant the broadest scope in introducing expert testimony on obscenity. "Where the question is whether portrayals of sexual conduct are 'obscene' under the statutory definition, it would be a rare case in which testimony from a qualified expert should be excluded on the ground that it would not be helpful to the trier of fact." *Commonwealth* v. *Trainor, supra.*[4]

"We have repeatedly stated that the question of an expert's qualifications is for the trial judge, and his determination will be reversed only on an abuse of discretion or error

---

[4] The importance of expert testimony in an obscenity case is also demonstrated by the fact that it can serve as a substitute for voluminous comparative evidence. See *Hamling* v. *United States*, 418 U.S. 87, 127 (1974); *Smith* v. *California*, 361 U.S. 147, 172 (1959) (Harlan, J., concurring in part and dissenting in part).

as matter of law." *Commonwealth* v. *Boyd,* 367 Mass. 169, 182 (1975), and cases cited. See *Commonwealth* v. *Seit,* 373 Mass. 83, 92 (1977); *Campbell* v. *Thornton,* 368 Mass. 528, 541 (1975). "The criterion of the judge is whether the witness possesses sufficient skill, knowledge or experience in the field of his testimony that the jury may receive appreciable assistance from it." *Commonwealth* v. *Boyd, supra.* In light of the numerous possible reasons for a trial judge's ruling that a witness is not qualified as an expert, we are reluctant to act on appeal solely on the basis of our independent opinion that a witness was qualified. Nevertheless, a trial judge's broad discretion in ruling on the qualifications of an expert witness "is not without limits." *Edinburg* v. *Merry,* 11 Mass. App. Ct. 775, 777 (1981), and cases cited. Moreover, because of the special concerns involved, we bring closer scrutiny to the exclusion of expert testimony proffered by the defense in an obscenity case. See *Hewitt* v. *State Bd. of Censors,* 243 Md. 574, 582 (1966).

In the instant case, we cannot think of any acceptable reason why Professor Blinderman was not qualified to testify as an expert on the artistic value of the film. Professor Blinderman's undisputed testimony on voir dire was that he was a professor of English and an affiliate professor of biology at Clark University in Worcester, that he had been a professor there for twenty years, that he taught an evening division course surveying erotic art over the centuries, that he had taught a total of 100 students in this course, and was familiar with their views on erotic art, that the course dealt in part with the nature of erotic expression in the Commonwealth, that he also did independent investigation in the Worcester area to study erotic art, that in this connection he purchased some magazines from convenience stores, saw two films at the "Fine Arts Theater," saw some videotapes from a Worcester store, and reviewed books from two Worcester bookstores, to get an idea of the availability and the nature of sexually explicit material in Worcester, that he had read several reports and treatises on pornography, and that, as a result of his professional training, experience, re-

search, study, and investigation, he was familiar with contemporary trends and attitudes toward the depiction of sexual conduct in Massachusetts. In these circumstances, we conclude that it was error to refuse to allow Professor Blinderman to testify about the artistic value of the film. We note that although credibility is a factor in ruling on the qualifications of an expert witness, *Rubin* v. *Arlington*, 327 Mass. 382, 384 (1951), there is no indication here that the judge disbelieved Professor Blinderman's description of his qualifications. Indeed, in a case, such as this one, involving constitutional problems of free speech, it is reasonable to require that a trial judge who excludes expert testimony because he disbelieves the witness' testimony as to qualifications should make a specific finding to that effect. The judge made no such finding here.

Because our foregoing conclusion requires a new trial, it is unnecessary for us to consider the further issue whether there also was error in the judge's ruling that Professor Blinderman was not qualified to testify about Statewide contemporary standards. We observe only that the issue is closer than the artistic value issue, and that were we to rule on Professor Blinderman's qualifications in the first instance, we might well be inclined to find that he was also qualified to testify about Statewide standards. In this connection, we stress that the fact that Professor Blinderman's testimony was chiefly of familiarity with the Worcester area did not indicate that he was not qualified to testify as to Statewide standards, since the obscenity statute assumes that a uniform, Statewide standard exists. See *Commonwealth* v. *Trainor*, 374 Mass. 796, 805 (1978). Nor was Professor Blinderman unqualified solely because he had not conducted a valid public opinion poll or survey. An expert may be qualified to testify as to community standards based on relevant training, experience, research, study, and investigation. It is clear that Professor Blinderman's asserted expertise did not rest solely on his knowledge of the views expressed by the students in his evening division class.

4. What we have said above is dispositive of the case at this time. Nevertheless, we discuss some of the defendant's other claims because they are likely to recur at a retrial of this matter.

Prior to the trial, the judge granted a motion in limine by the Commonwealth requesting that the judge order "that the defendant refrain from arguing to the jury that because the films were viewed by consenting adults it constitutes either a defense or appropriate consideration for the jury in determining whether the defendant is guilty of dissemination of obscene matter." "The purpose of a motion in limine is to prevent irrelevant, inadmissible or prejudicial matters from being admitted in evidence . . . and in granting such a motion, a judge has discretion similar to that which he has when deciding whether to admit or exclude evidence . . ." (citations omitted). *Commonwealth* v. *Lopez,* 383 Mass. 497, 500 n.2 (1981).[5]

The parties correctly agree that the fact that the film was available only to consenting adults is not a defense to a charge of disseminating obscene matter under § 29. See *Paris Adult Theatre I* v. *Slaton,* 413 U.S. 49, 57 (1973); *New Palm Gardens, Inc.* v. *Alcoholic Beverages Control Comm'n,* 11 Mass. App. Ct. 785, 795-796 (1981); *Commonwealth* v. *Kocinski,* 11 Mass. App. Ct. 120, 123 n.5 (1981). However, the defendant argues that based on *Commonwealth* v. *Plank,* 378 Mass. 465, 469-470 (1979), it is an appropriate consideration on the issue of patent offensiveness. As indicated *supra,* we agree that "the issue of patent offensiveness is to be decided in context." *Commonwealth* v. *Plank, supra* at 469. Our holding there that a nude dance was not obscene rested in part on the fact that "[s]o far as appears, the dance took place on a stage in a 'club' before *willing adult patrons*" (emphasis supplied). *Id.*

---

[5] See *Commonwealth* v. *Hood, ante* 581, 595 n.5 (1983), for our firm suggestion that restraint be used in allowing motions in limine aimed toward exclusion of defense evidence in criminal trials. See also *id.* at 594-598 (Liacos, J., concurring).

The record indicates that the judge allowed the Commonwealth's motion based on his view that the consenting adults issue was irrelevant. This was error, in so far as "the context" in which the allegedly obscene material was disseminated, including the fact that it was available to consenting adults, is an appropriate consideration in determining whether the material is obscene. However, we do not think that defense counsel's inability to use the words, "consenting adults," was prejudicial. In closing argument, defense counsel, without objection, made the following argument "What is patently offensive? Officer Dussault [the arresting officer] mentioned a drive-in theater that shows 'X' rated movies. Would it make a difference to you, as an average person . . . if this film . . . [was] shown at the drive-in theater close to a highway? Would it make any difference to you if you went to a sex theater or Showcase Cinema or White City Cinema and went in and watched this film? Would that make a difference? Where is the place? The place has been here since at least 1976. It's a place that deals with sexually explicit materials. There is no doubt about that. Take a look at the front of the store. They were there for viewing in booths in the back. One person per booth. Does that circumstance affect the average person's view of what is patently offensive?" Defense counsel also stated that "[t]here are, in the City of Worcester alone, many adult uses . . . they're uses which restrict actions to adults and His Honor will tell you in this particular case you need not speculate as to minors. We're talking strictly of the impact of these films on adults. Minors are not involved in this case and it has nothing to do with your consideration." Moreover, the evidence given by Officer Phillip Dussault at trial was that the front of the United Books' store was glass that was painted yellow, with a sign stating "No one under 21 allowed"; that the coin-operated films were available in booths in a room at the rear of the store; and that each booth had a door which, when shut, served as the screen for the coin-operated film. In these circumstances, we think the jury were adequately ap-

prised of the context in which "Seak's Fullfillment" was available in determining whether it was patently offensive. Accordingly, the defendant was not prejudiced by its inability to refer to "consenting adults."

The defendant also argues that the judge erred in granting a motion in limine by the Commonwealth requesting that the judge order "that the defendant refrain from making reference to an entertainment license granted by the city of Worcester for showing coin-operated films on the premises at United Book[s], Inc. . . . ." Whatever the relevance of the defendant's license to the issues at bar, the fact of the license was fully presented to the jury by the parties' stipulation, which was read to the jury, that "the defendant, United Books Inc. is a duly organized and existing Massachusetts corporation and at the time of this alleged offense, the defendant United Book[s], Inc. was duly licensed by the City of Worcester to offer coin operated films for viewing in each of the booths on the premises."

Finally, the defendant raises two objections to the jury instructions. First, the defendant argues that the judge erred in declining to instruct the jury that the Commonwealth must prove each of the three statutory elements of obscenity beyond a reasonable doubt. The judge instructed the jury on the presumption of innocence and the Commonwealth's burden of proof beyond a reasonable doubt. He stated that the Commonwealth must prove beyond a reasonable doubt that the material in evidence is obscene, that the defendant disseminated the material, and that the defendant knew it was obscene. He then listed the three statutory elements of obscenity, repeated them for emphasis, and described each element correctly in detail. In this situation, we think the defendant's argument is properly rejected on the reasoning that "the [defendant] [is] not entitled to any particular instruction as long as the charge, as a whole, was adequate." *Commonwealth* v. *Sherry*, 386 Mass. 682, 696 (1982), and cases cited.

The defendant also contends that since the judge instructed the jury that "obscene material is not protected by the

first amendment," the judge erred in refusing to give the
jury an instruction requested by the defendant that the film
was presumptively protected by the First Amendment until
proved to be obscene. The judge's instructions on obsceni-
ty, discussed *supra*, made it clear that the defendant was
presumed to be innocent unless and until the Common-
wealth proved beyond a reasonable doubt that the film was
obscene. The instruction requested by the defendant would
have added nothing of substance to the already adequate
charge. Thus, the judge did not err in refusing to give the
requested instruction. *Commonwealth* v. *Sherry, supra.*
*Roaden* v. *Kentucky,* 413 U.S. 496 (1973), and *Bantam
Books, Inc.* v. *Sullivan,* 372 U.S. 58 (1963), relied on by the
defendant, are inapposite. Both cases deal with the more
stringent *procedures* required when the government seizes
books or films. Similarly, *Miller* v. *California,* 413 U.S. 15
(1973), stresses the need for a precise statutory definition of
obscenity to avoid constitutional problems. These cases do
not require that a judge explicitly instruct a jury in an
obscenity case that the material at issue is presumptively
protected by the First Amendment. An adequate charge on
the elements of obscenity and the presumption of innocence
is sufficient in this regard.

> *Judgment reversed.*
> *Verdict set aside.*

ABRAMS, J. (concurring). I adhere to the views expressed
in my dissent in *Commonwealth* v. *Trainor,* 374 Mass. 796,
807-811 (1978). Accepting the fact that my views did not
prevail, I concur in this opinion.