COMMONWEALTH vs. GLENN R. SMYTHE.

Worcester. October 21, 1986. — January 6, 1987.

Present: DREBEN, CUTTER, & FINE, JJ.

*Evidence,* Breathalyzer test, Expert opinion. *Practice, Criminal,* Judicial discretion, Findings by judge. *Motor Vehicle,* Operating under the influence. *Witness,* Expert.

A device known as the "Intoxilyzer 5000," used to measure blood alcohol content on the basis of breath samples, performs a chemical test or analysis of the breath within the meaning of G. L. c. 90, § 24(1)(*e*), the results of which are admissible at a trial on a charge of operating a motor vehicle while under the influence of intoxicating liquor. [349-351]

At the trial of a complaint charging operation of a motor vehicle while under the influence of intoxicating liquor, the judge's unexplained exclusion of the testimony of an expert witness for the defense required reversal of the defendant's conviction, where on the record it appeared that the witness's qualifications in matters relating to alcohol consumption and testing methods were substantial, where the objections made by the prosecutor to the testimony primarily affected its weight, and where, if the jury had been allowed to hear the proffered testimony of the witness that the results of the defendant's breathalyzer test were unreliable, they might not have drawn the inference that the defendant was under the influence of liquor at the time of his arrest. [351-355]

COMPLAINTS received and sworn to in the Westborough Division of the District Court Department on January 28, 1985.

In the jury session of the Worcester Division, the cases were tried before *Francis George,* J.

*David C. Casey* for the defendant.

*Claudia R. Sullivan,* Assistant District Attorney, for the Commonwealth.

FINE, J. A jury of six in a District Court convicted the defendant of operating a motor vehicle while under the influence of intoxicating liquor and of failing to stay within marked lanes. The Commonwealth's case consisted of testimony from the arresting officer about the events, the results of a breath test

administered on a device known as the "Intoxilyzer 5000" revealing a blood alcohol content of .17 percent weight by volume, and a videotape taken of the defendant while he was being booked and while the breath test was being administered. The defendant attempted unsuccessfully to have the judge suppress the breath-test results on the ground that the "Intoxilyzer 5000" does not perform a "chemical test or analysis of his breath" within the meaning of G. L. c. 90, § 24(1)(*e*), as appearing in St. 1980, c. 383, § 1. The defendant's case consisted of his own testimony as to his activities, including the consumption of alcohol, during the night of his arrest. In addition, he offered to produce an expert witness to challenge the accuracy of the breath-test results. The proposed witness, one Patrick Demers, testified at length on voir dire concerning his qualifications and opinions. Without any findings or explanation, the trial judge exluded all testimony from Demers.

In this appeal, the defendant contends that it was error for the judge (1) to allow evidence concerning the breath-test results and (2) to exclude the expert's testimony. We rule that the Intoxilyzer 5000 is a breath-testing device capable of yielding results which may be admissible in evidence under G. L. c. 90, § 24(1)(*e*). However, we rule that, in the circumstances, the judge erred in excluding all expert testimony from Demers in the absence of any proper basis for doing so. The defendant, thus, is entitled to a new trial on the conviction of operating under the influence. As none of the reasons for reversal applies to the conviction of failing to stay within marked lanes, that conviction stands.

1. *The Intoxilyzer 5000 is a chemical test or analysis of the breath.* General Laws c. 90, § 24(1)(*e*), provides that, so long as certain conditions are met, including the consent of the defendant to the test,

> "[i]n any prosecution for [operating a motor vehicle while under the influence of intoxicating liquor], evidence of the percentage, by weight, of alcohol in the defendant's blood at the time of the alleged offense, as shown by

chemical test or analysis of his blood or as indicated by chemical test or analysis of his breath, shall be admissible and deemed relevant to the determination of the question of whether such defendant was at such time under the influence of intoxicating liquor; . . ."

The Legislature has recognized that "the [Smith & Wesson] Model 900A Breathalyzer and other scientific instruments that measure blood alcohol content on the basis of breath samples have for some time been deemed to satisfy the Commonwealth's 'general acceptance' standard for admissibility of scientific evidence . . . ." *Commonwealth* v. *Neal,* 392 Mass. 1, 17 (1984). The Intoxilyzer 5000 is an infrared photometric instrument designed to measure ethyl alcohol in the breath. Its operation is based upon the scientific principle that vaporized alcohol will absorb infrared light of a wavelength of 3.39 microns at a rate different from that of other chemical compounds.[1] The device measures the amount of infrared light absorbed and translates that measurement into a blood alcohol content reading. Although it is a more sophisticated instrument than the breathalyzers used since the early nineteen sixties, its functioning is based, nevertheless, upon the same underlying scientific principle (known as Henry's Law): that, at any given temperature, the ratio between the concentration of alcohol in one's blood and that in the alveolar air in the lungs is a constant: 2,100:1. See 4 Gray, Attorneys' Textbook of Medicine par. 133.73(1) (1986).

"Chemistry" is a "science that deals with the composition, structure, and properties of substances . . . ." Webster's Third New International Dictionary 384 (1971). "Chemical analysis" has been defined as "the corpus of all techniques whereby any exact chemical information is obtained." The New Columbia

---

[1] The principle underlying infrared analysis of substances derives from the Beer-Lambert law of absorption. According to this law, molecules absorb electromagnetic radiation, and only radiation of certain wavelengths will be absorbed by a molecule of any given compound. See *People* v. *Jones,* 118 Misc. 2d 687, 688 n.2 (N.Y. Albany County Ct. 1983), and 2 Erwin, Defense of Drunk Driving Cases § 24A.01 (3d ed. 1986), for further discussions.

Encyclopedia 520 (1973), cited in *Dayton* v. *Schenck,* 63 Ohio Misc. 14 (Dayton Mun. Ct. 1980). The defendant argues that the phrase "chemical test or analysis" is limited to tests or analyses performed with chemicals. The statutory authorization, however, is not by its terms limited to tests which utilize chemical reactions. The machine in question analyzes the suspect's breath for the presence of ethyl alcohol, an identifiable ·chemical compound, and measures its concentration by means of a physical test routinely used for that purpose by chemists. In every other jurisdiction in which the issue has been raised, Intoxilyzer 5000 machines or similar devices have been determined to perform "chemical" analyses. See *Dollar* v. *State,* 287 Ark. 153 (1985); *Husk* v. *State,* 476 N.E. 2d 149 (Ind. Ct. App. 1985).[2] The Legislature would not have intended to limit the authorization it was providing for the important public purpose of facilitating reliable proof in drunk driving prosecutions to the technology which happened to be available when the original breath-test legislation was passed in 1961. St. 1961, c. 340. The instrument in question is, in our view, of a type that the Legislature must have meant to include. The evidence of the test result was properly admitted.

2. *The expert testimony was improperly excluded.* The qualifications and opinions of Demers, the expert witness offered by the defendant, were explored at length on voir dire. The qualifications of the witness in matters relating to alcohol con-

---

[2] See also *State* v. *Vega,* 12 Ohio St. 3d 185 (1984). The issue has been dealt with in a number of published trial court opinions. See *State* v. *Moore,* 307 A. 2d 548, 549 (Del. Super. 1973); *Dayton* v. *Schenck,* 63 Ohio Misc. 14 (Dayton Mun. Ct. 1980); *People* v. *Jones,* 118 Misc. 2d at 688 n.2. On the use of the machine generally, also see *Daley* v. *Commissioner of Pub. Safety,* 384 N.W. 2d 536 (Minn. Ct. App. 1986); *People* v. *Gallagher,* 132 Misc. 2d 195 (N.Y. Dist. Ct. 1986). The Federal government has accepted the Intoxilyzer 5000 device. See Flores, Results of Qualification Testing of Devices to Measure Breath Alcohol (prepared for U.S. Dept. of Transp. Natl. Hy. Traffic Safety Admn., 1983); 51 Fed. Reg. 12258 (1986). (For the standards used in the Federal testing, see 38 Fed. Reg. 30459 et seq. [1973].) Numerous States by statute or regulation have approved its use.

sumption and testing methods are substantial.[3] He also had sufficient knowledge of the particular facts so that his opinions were not formed in the abstract. He stated that he was familiar with the operation of infrared breath-analysis machines, that he had reviewed the police department's ownership and maintenance records of the machine in question, and that he had viewed the videotape of the defendant's breath test and inspected the defendant's test printout.

According to his voir dire testimony, Demers was prepared to state, among other things: (a) that the particular Intoxilyzer 5000 machine used for the defendant's breath analysis was not properly installed, maintained, tested, calibrated, or operated; (b) that the defendant, as observed by the witness on the videotape, did not display the clinically observable signs expected of an individual with a .17 percent blood alcohol content; (c) the amount of alcohol a person of the defendant's size would need to consume during the relevant time period in order to obtain a .17 percent blood alcohol content; and (d) what the defendant's blood alcohol content would have been if he had consumed only the amount of alcohol the defendant said he consumed. The Commonwealth objected to the introduction of the evidence. The prosecutor took issue before the trial judge with the substance of some of Demers' opinion, and objected to Demers' qualifications. Demers, the prosecutor pointed out, was not a physician; he did not own an Intoxilyzer 5000; and he had received no specific training or licensing on that machine. The prosecutor argued that the expert's examination of the videotape was an insufficient basis for the conclu-

---

[3] Demers testified that he holds a Bachelor of Science degree from the Massachusetts College of Pharmacy and a Master of Science degree in forensic chemistry from Northeastern University. He lectures at Northeastern University in the field of forensic toxicology, and he teaches at the Maine Criminal Justice Academy in the areas of forensic chemistry, alcohol analysis, drug analysis and pharmacology, and the predictable effects of alcohol upon gross motor functions. He serves as an observer on the National Committee for Clinical Laboratory Standards and for some fourteen years has owned and operated a forensic chemistry facility which conducts chemical analysis for product liability cases and crime laboratory work for Maine State and local police as well as the Maine State fire marshal's and sheriffs' departments.

sions he reached about the extent of the defendant's intoxication. Finally, the prosecutor maintained that *Commonwealth v. Connolly,* 394 Mass. 169 (1985), barred any expert testimony as to what the blood alcohol content would be of a person who had consumed the amount of alcohol the defendant said he had consumed. Without offering defense counsel an opportunity to respond to the Commonwealth's objection, the judge stated, "I'm going to exclude the evidence."

On appeal, the Commonwealth concedes that a defendant charged with operating a motor vehicle while intoxicated may use expert testimony to challenge the accuracy of his particular breath-test results. Although direct authority in this Commonwealth concerning expert testimony in drunk driving cases is sparse, a contrary rule could deprive a defendant of the opportunity to present a meaningful defense. See *Commonwealth v. Neal,* 392 Mass. at 8; *California v. Trombetta,* 467 U.S. 479, 485 (1984). See and compare *Commonwealth v. Connolly,* 394 Mass. at 175.[4] Certainly, the reliability of chemical tests and the application of scientific principles and formulae are matters outside the common knowledge of jurors, and an expert's opinion could be of assistance to them. See *Commonwealth v. Francis* 390 Mass. 89, 98-99 & n.6 (1983). The Commonwealth now seems to dispute only the qualifications of the expert, an issue which, the Commonwealth correctly

---

[4] Other States have regularly held that a defendant is entitled to introduce expert testimony to challenge the accuracy of a breath-test. See *Lauderdale v. State,* 548 P.2d 376, 379 (Alaska 1976); *Minnesota Dept. of Pub. Safety v. Habisch,* 313 N.W. 2d 13, 16 (Minn. 1981); *Daley v. Commissioner of Pub. Safety,* 384 N.W. 2d at 537-538; *State v. Lutz,* 149 N.J. Super. 470 (1977); *Romano v. Kimmelman,* 190 N.J. Super. 554, 565 (1983); *People v. Ippolito,* 100 A.D. 2d 734 (N.Y. 1984); *Dodds v. North Dakota State Hwy. Commr.,* 354 N.W. 2d 165, 169-170 (N.D. 1984); *State v. Vega,* 12 Ohio St. 3d 185, 189 (1984); *State v. Wood,* 41 Or. App. 31 (1979).

Ohio, Texas, and Vermont courts have approved the admission of qualified expert testimony concerning the predictable effects of a certain amount of alcohol over specific periods of time. See *Columbus v. Day,* 24 Ohio App. 3d 173 (1985); *State v. Murphy,* 7 Ohio Misc. 2d 1 (Girard Mun. Ct. 1983); *State v. Bessette,* 130 Vt. 438, 440-441 (1972); *State v. White,* 147 Vt. 73, 77 (1982); *Fletcher v. State,* 382 S.W. 2d 931 (Tex. Crim. App. 1964).

points out, ordinarily lies within the judge's discretion. That discretion, however, is not without limits. See *Commonwealth v. Banuchi,* 335 Mass. 649, 655 (1957); *Commonwealth v. United Books, Inc.,* 389 Mass. 888, 896 (1983). In a criminal case the denial of a defendant's right to present expert testimony merits close scrutiny. On this record, where we can discern no acceptable basis for what seems to us the arbitrary blanket rejection of Demers' opinion testimony, the limits were exceeded. Demers appeared to possess "sufficient skill, knowledge [and] experience in the field of his testimony that the jury [might have] receive[d] appreciable assistance from it." *Commonwealth v. United Books, Inc.,* 389 Mass. at 896, quoting from *Commonwealth v. Boyd,* 367 Mass. 169, 182 (1975). See *Department of Youth Services v. A Juvenile,* 398 Mass. 516, 527 (1986). He had sufficient familiarity with the subject matter. An expert need not be personally familiar with every aspect of a question at issue. "The [expert] witness . . . may base his opinion upon facts observed by himself or within his own knowledge and testified to by himself, or upon facts assumed in the questions put to him and supported either by admitted facts or by the testimony of other witnesses already given or to be given at the trial, or upon facts derived partly from one source and partly from the other." *Commonwealth v. Russ,* 232 Mass. 58, 73 (1919).

The admission in evidence of the breath-test result triggered instructions to the jury that they could infer that the defendant at the time of his arrest was under the influence of alcohol. If the jury had been allowed to hear from the expert that the defendant's test results were unreliable, they might not have drawn the adverse inference. The offered opinions, thus, were relevant to the issue. (Compare *Commonwealth v. Connolly,* 394 Mass. at 175, in which the expert opinion offered was held to be inadmissible because the defendant had refused to have his breath tested.) The points made by the prosecutor in objection to the testimony were directed primarily to the weight it deserved. Those points could form the basis for effective cross-examination. The Commonwealth could also counter the force of the defendant's evidence by presenting an opposing expert witness.

If, for some reason, the judge found the witness lacking in credibility, it would have been helpful if he had made specific findings to that effect. See *Commonwealth* v. *United Books, Inc.,* 389 Mass. at 897, a criminal case which deals with the highly controversial subject of pornography and which strongly suggests that a trial judge should provide some findings or explanation when in such a case he denies a defendant's request to present the testimony of a qualified expert on a relevant issue on which such testimony could assist the jury. In the absence of such an explanation or factual basis, there is slight reason for an appellate court to defer to the judge's exercise of discretion because that court may find it difficult to know whether any discretion was in fact exercised. At any new trial in this case, if the defense should offer Demers or another expert witness of like qualifications, the witness should be permitted to state opinions relating to the reliability of the defendant's breath-test results unless, as to any particular opinion, the judge makes findings to indicate why he regards the expert as unqualified to express that opinion.

The judgment on the complaint for operating under the influence of intoxicating liquor is reversed and the verdict is set aside. The judgment on the complaint for failing to stay within marked lanes is affirmed.

*So ordered.*