COMMONWEALTH *vs.* DANE ENTERTAINMENT SERVICES, INC.

Suffolk.    January 10, 1985. — April 2, 1985.

Present: GREANEY, C.J., KASS, & FINE, JJ.

*Obscenity,* Knowing dissemination of obscene matter, Community standard. *Public Entertainment. Practice, Criminal,* Instructions to jury. *Penalty. Selective Prosecution. Search and Seizure,* Motion picture film.

At the trial of a complaint charging that the operator of a motion picture theatre possessed obscene material with intent to disseminate it, the judge was required to instruct the jury that the issue of patent offensiveness of the material, a motion picture film, must be decided with reference to the context in which the film was shown, where the defense had made timely request for such an instruction, where the instruction was warranted by the considerable evidence relating to context, and where the closing argument of the prosecutor may have left the jury with the erroneous impression that evidence of context was entitled to no weight. [574-578] GREANEY, C.J., dissenting.

A special cost assessment, commonly called a surfine, can be levied pursuant to G. L. c. 280, § 6A, against a convicted defendant, in addition to the maximum fine permitted by a particular criminal statute, without violating either statute and without infringing upon the prohibition against excessive fines as contained in art. 26 of the Massachusetts Declaration of Rights. [579-580]

The operator of a motion picture theatre made no evidentiary showing that the obscenity laws had been enforced against it in a discriminatory manner. [580]

The affidavit in support of a warrant authorizing the seizure of a certain motion picture film was not required either to state that the film lacked serious literary, artistic, political, or scientific value or to allege that it consisted entirely of sexual scenes. [580-581]

At the trial of an obscenity case the judge's reference in his charge to the jury's duty to apply "community standards 'today'" violated no constitutional prohibition against ex post facto laws. [581]

COMPLAINT received and sworn to in the Chelsea Division of the District Court Department on May 25, 1983.

The case was tried before *William J. Tierney,* J., in the jury session of the Boston Municipal Court Department.

*Lee Carl Bromberg* for the defendant.

*Paul J. McCallum,* Assistant District Attorney, for the Commonwealth.

FINE, J. After viewing a full length motion picture entitled "Sorority Sweethearts" at a cinema in Chelsea operated by the defendant, two Chelsea police officers, considering the film to be obscene, obtained and executed a search warrant. The officers seized the film and other materials (timetables of the film's showing, ticket stubs, etc.) from the cinema. A six-person jury in the Boston Municipal Court convicted the defendant under G. L. c. 272, § 29, as appearing in St. 1982, c. 603, § 3,[1] of possession of obscene matter with intent to disseminate, and the judge imposed a $10,000 fine and a $2,500 surfine.

On appeal, the defendant claims, among other things, that the judge erred in the course of defining obscenity to the jury.[2]

---

[1] That section provides: "Whoever disseminates any matter which is obscene, knowing it to be obscene, or whoever has in his possession any matter which is obscene, knowing it to be obscene, with the intent to disseminate the same, shall be punished by imprisonment in the state prison for not more than five years or in a jail or house of correction for not more than two and one-half years, or by a fine of not less than one thousand nor more than ten thousand dollars for the first offense, not less than five thousand nor more than twenty thousand dollars for the second offense, or not less than ten thousand nor more than thirty thousand dollars for the third and subsequent offenses, or by both such fine and imprisonment. A prosecution commenced under this section shall not be continued without a finding nor placed on file. It shall be a defense under this section if the evidence proves that the defendant was a bona fide school, museum or library, or was acting in the course of his employment as an employee of such organization or of a retail outlet affiliated with and serving the educational purpose of such organization."

[2] The Commonwealth, upon examining the defendant's record appendix and brief, moved for summary disposition of the appeal pursuant to rule 1:28 of this court, as amended, 10 Mass. App. Ct. 942 (1980), urging that the "appeal presents no substantial question of law."

Supporting the Commonwealth's motion is an eleven-page memorandum of law which argues that several claims of error raised by the defendant have been decided adversely to it in previous decisions of the Supreme Judicial Court and this court, and that the defendant's remaining claims lack substantial merit. The Commonwealth's motion has been opposed by

The judge stated correctly in general terms that the test for obscenity is whether, taking the material as a whole, it "(1) appeals to the prurient interest of the average person applying the contemporary standards of the county where the offense was committed; (2) depicts or describes sexual conduct in a patently offensive way; and (3) lacks serious literary, artistic, political or scientific value." G. L. c. 272, § 31, as amended through St. 1982, c. 603, § 7. See *Miller* v. *California,* 413 U.S. 15, 24 (1973). The defendant, however, requested an additional instruction that the issue of patent offensiveness, the second requirement, must be decided "in context."[3] The

the defendant, which argues (1) that rule 1:28 expressly prohibits any consideration of an appeal for decision under its provisions until the Commonwealth has filed fifteen copies of a formal brief, and (2) that all its claims have substantial merit. Since we have found sufficient merit in one of the defendant's claims to justify reversal, we decline to deal with the appeal summarily. We point out, however, that the defendant's construction of rule 1:28 is wrong. The reference in the rule to rules 14(b), 18 and 19 of the rules of appellate procedure, is not exclusive or mandatory. Massachusetts Rule of Appellate Procedure 2, 365 Mass. 845 (1974), permits "[i]n the interest of expediting decision," suspension of any of the requirements of the appellate rules pertaining to briefs. See also the last sentence of the first paragraph of Mass.R.A.P. 20(a), 365 Mass. 868 (1974), which authorizes a single justice or a panel of Justices to accept briefs which are not in substantial compliance with the rules governing briefs. We have construed these and other relevant rules of appellate procedure as empowering us to permit, where appropriate, less than formal compliance with briefing requirements. Our construction of the rules has also extended to criminal cases where the Commonwealth or the defendant believes the appeal can be expeditiously decided under the provisions of rule 1:28. The rules of appellate procedure and the cognate provisions of rule 1:28 must be construed together to effectuate the fair but prompt disposition of appeals. In appropriate cases, the procedure used by the Commonwealth here will allow it to save the cost of printing fifteen copies of a formal brief while still satisfying its obligation to provide adequate argument on the issues on the appeal. See *Lolos* v. *Berlin,* 338 Mass. 10, 13-14 (1958). If the case turns out to be more complicated than suggested by the moving party, or that party's memorandum is inadequate on some or all of the issues, fuller briefing can be required. The opportunity for oral argument is given in all criminal cases. The Commonwealth's motion and memorandum were proper in this case.

[3] The requested instruction read as follows: "The issue of patent offensiveness should be decided in context. The jury should consider not only the films themselves, but also the circumstances under which they are to be disseminated. These circumstances include the nature and location of the

judge omitted any reference at all in his instructions to the "context" in which the film was shown, and the defendant made a timely and specific objection to his omission. The defendant argues that the decision of *Commonwealth* v. *United Books, Inc.,* 389 Mass. 888 (1983), requires some instruction on the issue and that a failure to give any instruction here requires a new trial.

In *Commonwealth* v. *United Books, Inc.,* the question was whether a coin-operated film was obscene. Based on his view that the issue of whether the film was viewed by "consenting adults" was irrelevant, the trial judge allowed the Commonwealth's *motion in limine* and ordered the defendant to refrain from making an argument to the jury based upon the restriction of access to the film to consenting adults. Relying on *Commonwealth* v. *Plank,* 378 Mass. 465, 469-470 (1979), the Supreme Judicial Court found this to be error. It held that " 'the context' in which the allegedly obscene material was disseminated, including the fact that it was available to consenting adults, is an appropriate consideration in determining whether the material is obscene." *Id.* at 899. Further, it pointed to testimony and argument about the location and appearance of the theatre, the age of its patrons, and the presence of a sign stating "No one under 21 allowed," as evidence "available" to the jury in determining whether the film was patently offensive. *Id.* at 899-900. Although it ultimately ruled that the judge's failure to permit reference to the term "consenting adults" was not prejudicial, it did so only because the record was replete with evidence of the context in which the film was shown, and because counsel for the defendant had highlighted this evidence in his closing argument to the jury. The court left no doubt, however, that the issue of context was of relevance to a jury in determining obscenity.[4]

---

business offering the films, notice to prospective patrons, and precautions, if any, to ensure that unwilling patrons will not be exposed to such films unwillingly."

[4] In *Commonwealth* v. *Dane Entertainment Servs., Inc.,* 16 Mass. App. Ct. 991 (1983), we upheld the exclusion of testimony concerning the location and appearance of the cinema showing the film stating, in reliance on the

In this case there was considerable evidence relating to the context in which the film was shown. There was testimony that the cinema was located in a shopping center containing food, drug, package, and discount department stores as well as several other smaller stores. A Chelsea police officer pointed out the location of the shopping center in relation to other nearby businesses. He described the cinema as "a two-story white, cement block building," containing a lobby leading to two theatres. There was no outside advertisement of the films being shown. The officer indicated that the cinema's ticket booth is located on the left hand side of the lobby. There was testimony that several signs, including one on the ticket booth, described the films being shown as "Triple X-rated," and advised that "Nobody under the age of 18 allowed." The officer also testified that, while he was in the theatre on two occasions viewing the film, only adults were present. This evidence was referred to by defense counsel in his closing argument to the jury on the issue of context.[5]

In view of this evidence and of the holding of *United Books,* it was reversible error for the judge to deny the defendant's

---

language from *Plank,* that "the context in which a dance is performed is distinguishable from the manner in which a film is distributed." 16 Mass. App. Ct. at 992. Insofar as the *United Books* case holds that such evidence is admissible, we do not follow our earlier decision.

[5] Defense counsel's argument proceeded as follows: "The issue is now before you. The evidence is closed. Was it a crime to show this film? We've seen from the testimony of Detective Riddell that the . . . Cinema is a two-story, cement block structure. It's got nothing on the outside, no marquee, no indication of what's playing. You've got to go into the lobby to find out what is playing. You enter the lobby through the glass door. You're immediately in front of the cashier's booth where as Detective Riddell told us, a woman was taking tickets; and there, signs are clearly posted $5 admission, $4 for senior citizens. Also, a sign is clearly posted in that cashier's booth, as Detective Riddell told us, that 'No one under 18 admitted.' and he also told us that he hadn't seen anything but adults in that theatre. He had been there to view the film. He had come back to seize it. On both occasions there were people purchasing tickets. There were people in the theatre viewing the film. It is for adults only. So that's the context in which this film was displayed and in which you must decide whether that was a criminal act to display the film to an audience of adults that paid to see it."

timely and pointed request for a jury instruction on context. When a party makes a request legally correct and pertinent to the issues presented by the case, it is incumbent on the judge to instruct the jury in a manner which substantially covers the particular point in question. *Weinberg* v. *Massachusetts Bay Transp. Authy.,* 348 Mass. 669, 671 (1965). *Varelakis* v. *Etterman,* 4 Mass. App. Ct. 841, 842 (1976). Without such an instruction here, the jury could not know what weight, if any, to give the considerable evidence on context which had been admitted. They were left uninformed by the judge as to how context related to the broader question of patent offensiveness. Moreover, the possibility of confusion was aggravated by closing remarks of the prosecutor which may have left the jury with the impression that evidence of context was of no importance in determining obscenity. In reference to defense counsel's closing argument the prosecutor stated, "The focus isn't whether it was adults that viewed it, because its not a crime to view the film." In these circumstances the jury could reasonably have concluded, erroneously, that the evidence they heard concerning the context in which the film was shown was to play no part in their deliberations. For us to say that the error was harmless involves us in speculation about how the jury would have applied the correct instruction and, in consequence, invades the jury's province.[6] The jurors were required to distinguish between what is obscene material and what is constitutionally protected speech based upon such abstract concepts as patent offensiveness, and we cannot say that, had the jury been properly instructed, the result might not have been different. Accordingly, we reverse the defendant's conviction and remand the case for a new trial.

We proceed to discuss those remaining claims of the defendant which could be of significance on retrial.

---

[6] The panel viewed the movie. Were it for us to make the finding, we would have no hesitation in saying that the film appealed solely and numbingly to the obsessively sexual (i.e. prurient) interest of the average person; that it depicted sexual conduct in a patently offensive way; that it utterly lacked serious literary or artistic value (no other was claimed for it) and that it brought to mind the dissenting Justices' phrase "the nadir of scatology." *Attorney General* v. *"Tropic of Cancer,"* 345 Mass. 11, 22 (1962).

(a) Upon conviction, the defendant was penalized by the maximum fine of $10,000 permitted by G. L. c. 272, § 29, as appearing in St. 1982, c. 603, § 3, to which was added a "special cost assessment" (commonly known as a surfine) of $2,500, pursuant to the provisions of G. L. c. 280, § 6A. The defendant argues that the imposition of the surfine violates art. 26 of the Declaration of Rights of the Massachusetts Constitution prohibiting the imposition of excessive fines because the surfine increased the fine beyond the maximum dollar limit set in c. 272, § 29. To support the argument, the defendant points to the language of § 6A of c. 280, as appearing in St. 1974, c. 241, § 2, the surfine law, which calls for the sentencing judge to "levy" the twenty-five percent surfine *before* the base fine is imposed.[7]

The Legislature, of course, determines how criminal conduct, once established, shall be punished. See *McDonald* v. *Commonwealth,* 173 Mass. 322, 328 (1899). There is nothing in the language of the surfine law which indicates that the fine and surfine together cannot exceed the maximum financial penalty provided for the underlying offense. The "before" language in § 6A of c. 280, seized upon by the defendant, when read in context, does nothing more than require that the surfine be calculated and imposed at the same time that the fine for the substantive crime is imposed. We think the Legislature would have made the point urged by the defendant in the black letter of the surfine law had it intended to control the limits of financial penalties for crimes set throughout numerous statutes. Amendment or repeal by indirection is disfavored and would occur here if the defendant's view is adopted, since the maximum fine in c. 272, § 29, would be reduced to $8,000 in order to allow the assessment of the surfine. Moreover, the purpose of the surfine law is to obtain added funds for the Commonwealth's use, some of the funds perhaps being used to

---

[7] The contention appears not to have been considered before. See *Commonwealth* v. *Marra,* 12 Mass. App. Ct. 956 (1981), where after conviction of a defendant under G. L. c. 148, § 13, a $25 surfine was added to a maximum fine of $100. The lawfulness of the surfine, however, was not an issue raised on the appeal in the *Marra* case.

promote the efficient administration of the criminal law. This purpose would be undermined by any view capping the total combination of fines at the limit set for the underlying offense. Consistent with the rules of statutory construction that the language of the law itself is the principal source of insight into the legislative purpose, *Hoffman* v. *Howmedica, Inc.,* 373 Mass. 32, 37 (1977), and that two or more statutes relating to the same subject matter should be construed together to constitute a harmonious whole consistent with the legislative purpose, *Board of Educ.* v. *Assessor of Worcester,* 368 Mass. 511, 513-514 (1975), we conclude that the surfine required by c. 280, § 6A, can be levied in addition to the maximum fine called for by a criminal statute without violating either statute or the Massachusetts Constitution.

(b) The defendant's constitutional challenges to G. L. c. 272, § 29 (the substantive crime charged by the complaint), and § 31 (the definition of terms in § 29), were disposed of adversely to the defendant in *Commonwealth* v. *Dane Entertainment Servs., Inc.,* 18 Mass. App. Ct. 446, 454 (1984).

(c) The defendant's motion for dismissal of the complaint on the ground of discriminatory enforcement of the obscenity laws was properly denied. The motion was supported only by newspaper clippings[8] and failed to show (as it must before the claim will merit a hearing) "that a broader class of persons than those prosecuted has violated the law . . . that failure to prosecute was either consistent or deliberate . . . and that the decision not to prosecute was based on an impermissible classification." *Commonwealth* v. *Franklin,* 376 Mass. 885, 894 (1978). We note further that no evidentiary hearing was requested by the defendant in connection with the motion.

(d) The motion to suppress the film and other items seized from the cinema was properly denied. The contentions that the affidavit in support of the search warrant was insufficient to support a finding of probable cause because the affidavit

---

[8] The clippings contained various comments by public officials concerning the type of film shown at the cinema in Chelsea and portions of an investigative report by a Boston newspaper into the dissemination of pornographic materials. The clippings are not very helpful since many are illegible.

(i) merely described sexually explicit scenes in the movie without stating that the movie lacked serious literary, artistic, political, or scientific value, and (ii) failed to allege that the sexual scenes constituted the entire movie, were decided adversely to the defendant in *Commonwealth* v. *Dane Entertainment Servs., Inc. (No. 1)*, 389 Mass. 902, 906-907 (1983). The claim that the police officers gained entry to the cinema by unlawful means, to the extent that it is material, is defeated by the judge's implicit finding, which is supported by the evidence, that the officers had the consent of the defendant's agent to enter without paying. See *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 227-229 (1973); *Commonwealth* v. *Cantalupo,* 7 Mass. App. Ct. 923 (1979).

(e) The contention that the judge's instruction that the jury must apply community standards "today" resulted in a violation of the prohibition against ex post facto laws is without merit. The phrase is the same one used by the Supreme Judicial Court in *Commonwealth* v. *707 Main Corp.*, 371 Mass. 374, 384 (1976). The use of community standards "today" would encompass both the time of the showing of the film and the time of trial, which were only eight months apart.

*Judgment reversed.*

*Verdict set aside.*

GREANEY, C.J. (dissenting). I disagree with the majority's conclusion that a new trial is required because the requested instruction on context was not given.

While the context in which allegedly obscene material is disseminated is relevant to the issue of the material's patent offensiveness, see *Commonwealth* v. *United Books, Inc.,* 389 Mass. 888, 899 (1983), the fact that an allegedly obscene "film was available only to consenting adults is not a defense to a charge of disseminating obscene matter under § 29." *Id.* at 898. Moreover, as G. L. c. 272, § 31, the statute establishing the three-part test for determining obscenity makes apparent, the question whether a motion picture film is patently offensive

is to be decided primarily by examination of the film itself. The difference between a motion picture film which is before the trier of fact (where context is of less relevance) and other types of performances which can only be verbally described to the trier (where context is more important) was underscored in *Commonwealth* v. *Plank,* 378 Mass. 465, 469 (1979), in the following terms: "Where the matter at issue is a film . . . and is in evidence, it may itself be sufficient evidence to warrant a finding of patent offensiveness. . . . A live performance such as a dance, on the other hand, cannot ordinarily be placed directly in evidence." The *Plank* decision went on to point out that, in the case of a performance which cannot be seen by the jury, evidence of context is virtually indispensible to deciding patent offensiveness.

Relating these principles to this case, I perceive no reversible error. As described in the majority opinion, the jury had before them extensive evidence of the context in which "Sorority Sweethearts" was shown, including testimony about the location of the theatre as part of a shopping center in Chelsea, its physical characteristics, advertisements of the film as triple x-rated, signs posted by management to keep out persons under age eighteen, and the adult composition of the audience when the officers saw the movie. The importance of context evidence was also argued at length in the closing remarks of defense counsel, see note 5 to the court's opinion, *supra,* who may have gained an advantage he was not entitled to by implying to the jury that it was not a crime to show the film to an audience of consenting adults. The prosecutor's brief reply to the argument merely sought to focus the jury on the correct inquiry in the case.[1] I see nothing in the prosecutor's argument which undermined the relevance of the evidence of context.[2]

---

[1] The prosecutor argued: "The focus isn't whether it was adults that viewed [the film], because its not a crime to view the film." The argument stated a correct principle of law and was an entirely proper attempt to dispel any incorrect implications created by defense counsel's closing argument.

[2] Although in *Commonwealth* v. *United Books, Inc., supra,* the necessity of an instruction on context was not in issue, no error was found where evidence of context was admitted and counsel for the defendant was permitted

What is of particular importance, however, in light of the legal distinctions discussed earlier, is the fact that the jury had "Sorority Sweethearts" for their complete viewing, and they also had before them the testimony of an expert witness called by the defense. The expert, a professor of English and film studies at Southeastern Massachusetts University, testified at length about the literary and artistic merit of "Sorority Sweethearts" in relation to the three-part test for determining obscenity, set forth in G. L. c. 272, § 31. The expert's testimony on the elements of obscenity, including the element of patent offensiveness, not context, made up the core of the defense in the case. The jury thus were able to compare the expert's testimony with what they actually saw in "Sorority Sweethearts." They ultimately decided to reject the expert's opinions concerning the film's literary and artistic merit and to find "Sorority Sweethearts" obscene based on their examination of its reel-to-reel depiction of acts of masturbation, bisexuality, fellatio, cunnilingus, and sexual intercourse.

Moreover, the jury found "Sorority Sweethearts" obscene in the light of clear, comprehensive, and correct instructions by the judge on the three-part statutory test for obscenity. These instructions emphasized that the jury were to apply the attitudes and standards of the average *adult* citizen of the community. I think the judge properly rejected the defendant's requested instruction, see note 3 to the court's opinion, *supra,* which bore down on the consenting adult theme, and which, if given, might have misled the jury into erroneously thinking that showing "Sorority Sweethearts" only to an audience of consenting adults constituted a complete defense. There was no negative instruction on context. The judge was not required to discuss in his charge every subsidiary fact and inference, *Commonwealth* v. *Monahan,* 349 Mass. 139, 171 (1965), so long as the charge, as a whole, was adequate. *Commonwealth*

to argue the relevance of the context evidence to the jury. In upholding the conviction, the court found (at 899-900) that, by the evidence and the closing argument, "the jury were adequately apprised of the context in which [the peep show] was available in determining whether it was patently offensive."

v. *Sherry,* 386 Mass. 682, 696 (1982). The charge, in my view, was more than adequate.

For the future, in order to ward off appeals like this one, I would urge some brief instruction in the final charge on context.[3] This judgment of conviction, however, I would let stand because I am satisfied that the jury's verdict finding "Sorority Sweethearts" obscene followed a fair trial and expresses the jury's unanimous agreement (to paraphrase Justice Potter Stewart's concurring opinion in *Jacobellis* v. *Ohio,* 378 U.S. 184, 197 [1964]), that we knew it when we saw it.[4]

---

[3] Instructions on the three-part test for determining obscenity pose no difficulty since the standards for each part of the test are set forth in G. L. c. 272, § 31. The statute furnishes, in essence, a pattern charge. A pattern charge may be desirable for the context instruction since it deals with the relevance of certain evidence. If not properly given, a context instruction could become confusing. In a situation involving a film which will be seen by the jury I would, for the present, confine the instruction to the language in *Commonwealth* v. *United Books, Inc., supra* at 898-899, which indicates that the fact a film is shown to consenting adults is not a defense to a charge under § 29, but that the context in which the film is shown, including the fact that it was available to consenting adults, is an appropriate consideration in determining whether the film is patently obscene.

[4] I join with majority in the disposition of the balance of the issues. I especially recommend the material in note 2 to the court's opinion, *supra,* since the summary disposition process under rule 1:28 is vital to this court's efficient operation. Although the issue of the charge on context has merit, as our disagreement illustrates, most of the remaining issues are susceptible to treatment under rule 1:28.