## COMMONWEALTH vs. BRIAN J. FOGARTY.

No. 87-1093.

Berkshire. February 16, 1988. — April 25, 1988.

Present: GREANEY, C.J., SMITH, & FINE, JJ.

*Practice, Criminal,* Continuance, Assistance of counsel, Grand jury proceeding, Severance. *Due Process of Law,* Continuance. *Constitutional Law,* Assistance of counsel. *Controlled Substances. Assault with Intent to Murder. Evidence,* Consciousness of guilt.

A judge did not err in denying a criminal defendant's motion for a continuance to obtain new counsel, made for the first time on the day trial was to begin, where there was no allegation of conflict of interest or lack of preparation and where the vague claim of a breakdown in the attorney-client relationship, with respect to trial strategy and personalities, was properly found to be no more than a tactic to delay the trial. [697-699]

There was no merit to a criminal defendant's claim of ineffective assistance of counsel at trial, nor was counsel to be faulted for not filing what would have been futile pretrial motions challenging the sufficiency of the grand jury evidence as to several of the indictments, where this evidence, taken as a whole, was sufficient to meet the test of probable cause to arrest. [699-701]

As sufficient evidence at the trial of indictments supported the jury's guilty verdicts on a cocaine trafficking charge and on various charges arising from a vicious assault, the defendant's motions for required findings of not guilty were properly denied. [701-702]

There was no abuse of discretion in a judge's denial of a criminal defendant's motion to sever indictments for trial, where the offenses were closely related in time and location and consisted of a single line of conduct. [702-703]

At a criminal trial no error appeared in the judge's evidentiary rulings, where the challenged testimony either was cumulative of other testimony admitted without objection, or was relevant to the defendant's consciousness of guilt. [703]

INDICTMENTS found and returned in the Superior Court Department on November 19, 1986.

The cases were tried before *William W. Simons,* J.

*Barry P. Wilson* for the defendant.

*Joel S. Fishman,* Assistant District Attorney, for the Commonwealth.

FINE, J. The seven indictments on which the defendant was tried arose out of (1) vicious assaults on two women, Irene Pizzi and Diane Makarski, one taking place within a few hours and a few miles of the other, and (2) the retrieval four and one-half days later of a blood-stained bag containing a large amount of cocaine in the woods near the residence of Diane Makarski. The two victims were longtime acquaintances of each other. The defendant was convicted of assault in a dwelling house with a dangerous weapon[1] (a pistol) on each of the victims, assault with intent to murder[2] each of the victims, assault and battery by means of a dangerous weapon[3] (a pistol) on each of the victims, and trafficking in cocaine.[4] After considering the numerous issues raised by the defendant on appeal, we conclude that the convictions should stand.

We recite the highlights of the evidence produced by the Commonwealth, with the events described in the order in which they occurred. The defendant, an attorney, resided in Florida but made frequent lengthy visits to western Massachusetts, often by car. He became romantically involved for a time with Diane Makarski. On September 28, 1986, Makarski, perhaps annoyed with the defendant about his inconstancy in their relationship, took, without permission, a sealed shoebox from the bed in a room which he frequently occupied in the home of his brother and sister-in-law, Matthew and Anne Fogarty. Makarski believed the box contained cocaine. She hid it in a shed in her back yard. The defendant and his brother, Matthew, made separate visits to a bar that evening, the Macano Inn in Great Barrington. The defendant left the bar around 11:45 P.M.

---

[1] G. L. c. 265, § 18A.

[2] G. L. c. 265, § 15.

[3] G. L. c. 265, § 15A.

[4] G. L. c. 94C, § 32E.

Some time after retiring for the night at her home in Stockbridge around 11:00 P.M., Irene Pizzi was awakened by someone beating her on the head with a small handgun. The assailant wanted to know the whereabouts of Diane Makarski. Makarski, he said, had something which belonged to him that he wanted returned. He said he knew that Pizzi knew where Makarski was because he had read "the note." (A note had been left on Makarski's door in nearby Housatonic signed by a different "Irene.") While being subjected to threats and beatings, Pizzi denied any knowledge of the note or of Makarski's whereabouts. The beating caused her to bleed profusely (type A blood). The man strangled Pizzi and put a pillow over her head. A second assailant present in Pizzi's bedroom also beat her. As she lost consciousness, she heard one of the two men say, "It's done" or "She's done." She was unable to identify the man who strangled her, but she recognized the voice of the second man in the room as that of Matthew Fogarty.

Some time after Makarski went to sleep in her apartment in Housatonic at around 11:30 P.M., she was awakened by the defendant knocking loudly on her porch door. She let him inside. He grabbed her, started to strangle her, and said, "Tell me where it is. I just did your girlfriend in. Tell me where it is, I just killed her." The defendant struck Makarski over the head with a small metal gun. She told him that what he wanted was in the shed. He kept beating her on the head, and she may have lost consciousness. She bled profusely (type O blood). As she was coming to, she saw the defendant holding a plastic bag in his hand which appeared to contain cocaine. As she was screaming, the defendant told her that someone who was waiting outside would come and silence her if she did not keep quiet. He told her he was going to kill her. As he looked down to prepare his gun, however, she managed to flee to a neighbor's house.

The two victims were hospitalized. After some initial reluctance, Makarski named the defendant as her assailant to the police. At around 6:00 A.M. on the morning following the attacks, the police went to the apartment occupied by Matthew and Anne Fogarty with a warrant for the defendant's arrest.

Only the defendant, Matthew Fogarty, and an unidentified third person were present. The defendant was asleep, fully clothed, with a twelve-gauge shotgun cradled across his stomach. After being given his Miranda warnings, the defendant was taken to a police station. The police again apprised the defendant of his Miranda rights, and the defendant agreed to answer questions. He said he had been in the Macano Inn until it closed at 2:00 that morning and that he then went home to bed. The Macano Inn owner testified that he recalled closing the bar that night at around 11:45 P.M. because business was slow. The defendant, he testified, was the only customer in the bar when he closed it.

Four and one-half days later, a hitchhiker noticed a yellow plastic bag hanging from a tree limb, about five feet from the ground, off the road near the baseball field bordering Makarski's apartment house. The yellow bag contained two plastic ziplock bags, which in turn contained 514 grams of cocaine. The wholesale value of the cocaine was about $86,000. On the bags was blood of type A and possibly also type O.

1. *Request for continuance and change of counsel.* The defendant's principal contention on appeal is that the trial judge erred in denying both the eleventh-hour request by the defendant for a continuance of his trial in order to obtain new counsel and the request by his privately-retained attorney, Ms. Elizabeth Quinlan, to withdraw. As we have indicated, the defendant is an attorney. The trial had been set for June 22, 1987, at Ms. Quinlan's request. The judge had reserved the time for the trial during the last week of the June session; there would be no other jury session in Berkshire County until September. The defendant had indicated his intention to offer a plea, but whatever plea arrangement had been made fell through. On the date set for the trial the judge was finishing up another matter. That day, for the first time, the defendant indicated that he no longer wanted Ms. Quinlan to represent him, and Ms. Quinlan also sought to withdraw. She referred to "certain disputes relative to witnesses, defense tactics," a "profound personality conflict," and a breakdown in the attorney-

client relationship which made it impossible for her adequately to represent the defendant. The judge invited the defendant to speak. The defendant said, "We have had irreconcilable differences of opinion, trial strategies and what have you." In a recorded conference between the defendant and Ms. Quinlan, a transcript of which was read by the judge before he ruled on the matter, they referred to a clash in personalities and differences as to tactics. Ms. Quinlan indicated, however, that she was prepared for trial. The following day, Ms. Quinlan also expressed her concern that her ability to conduct an effective defense might be affected by her fear of a posttrial claim of ineffective assistance of counsel.

The prosecutor objected to the requests, pointing out the reservation of the late June date, the impossibility of calling another case in for trial, the distress the delay would cause the victims, and the inconvenience to the numerous witnesses who had been summoned or placed on call and were ready to testify. A Florida attorney interested in representing the defendant made known to the judge through a telephone call that he could appear in a week and be ready for trial in a month.

The judge indicated that a similar motion for a continuance made at an earlier stage in the proceedings would almost certainly have been allowed. He denied the requests, however, because of their timing, because of the substantial inconvenience to the witnesses and the court, and because it appeared to him that the differences were tactical and that they would not cause such detriment that the defendant's rights would be jeopardized. As a result, the judge was "not convinced this delay is for a legitimate reason, quite honestly, at this stage." Presented with a choice whether to proceed with Ms. Quinlan as his attorney, pro se, or with standby counsel, the defendant chose the first alternative. At trial, Ms. Quinlan, described by the judge as a competent attorney, conducted a vigorous defense.

A defendant has a right under the Sixth and Fourteenth Amendments to the United States Constitution to have considerable deference given to his choice of counsel to represent him at a trial in which his liberty is at stake. The right is not

absolute, however, and on occasion it may be subordinate to the public's interest in the fair, efficient, and orderly administration of justice. See *Commonwealth* v. *Dunne*, 394 Mass. 10, 14 (1985); *United States* v. *Panzardi Alvarez*, 816 F.2d 813, 816 (1st Cir. 1987). The question whether to allow a continuance for change of counsel rests ordinarily in the sound discretion of the trial judge once he has made appropriate inquiry of the defendant as to the reasons for the request. See *Commonwealth* v. *Moran*, 388 Mass. 655, 659 (1983); *United States* v. *Torres*, 793 F.2d 436, 440 (1st Cir.), cert. denied, 479 U.S. 889 (1986). "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Ungar* v. *Sarafite*, 376 U.S. 575, 589 (1964). See *Commonwealth* v. *Dunne*, 394 Mass. at 14.

Among the significant factors to be considered in determining whether the denial of the continuance was justified is the timing of the request. See *Commonwealth* v. *Dunne*, 394 Mass. at 14. Here it was made on the eve of trial. Even at such a late hour, however, it may be error to deny such a request if good cause supports it. Conflict of interest, lack of preparation, or irreconcilable conflict between counsel and defendant may constitute good cause. Smith, Criminal Practice and Procedure § 1120 (1983). See *Commonwealth* v. *Miskel*, 364 Mass. 783, 789-790 (1974) (allegation of personality conflict not raised until commencement of trial not sufficient to require postponement of trial); *Commonwealth* v. *Cavanaugh*, 371 Mass. 46, 52, 57 (1976) (lack of preparation constituted good cause); *Commonwealth* v. *Tuitt*, 393 Mass. 801, 805-807 (1985) (allegations of lack of preparation and breakdown of communication); *Commonwealth* v. *Flowers*, 5 Mass. App. Ct. 557, 565-566 (1977), cert. denied, 434 U.S. 1077 (1978) (not a case of conflict of interest or lack of preparation, which would warrant further scrutiny); *Commonwealth* v. *Moran*, 17 Mass. App. Ct. 200, 206-207 (1983) (alleged conflict of interest). See also *Wilson* v. *Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985).

No claim of a conflict of interest or a lack of preparation was made to the trial judge in this case. The somewhat vague claims made here, relating to tactics and personality conflicts, were of a type best left for consideration by the trial judge. With the opportunity to make firsthand observations of the parties, familiarity with the procedural history of the case, and a full understanding of the consequences of a continuance, a trial judge is in the best situation to assess the seriousness of such claims. In this case, an experienced trial judge heard the parties, considered the relevant factors, and apparently determined that the real reason for the request was merely to delay the trial. On the information before him, there was no abuse of discretion. The denial of a motion for a change of counsel made on the eve of trial and alleging a breakdown of the attorney-client relationship does not provide a ground for a new trial unless the breakdown in communication is such that it leads to an apparently unjust verdict, prevents an adequate defense, or threatens the defendant's right to a fair trial. *Commonwealth* v. *Tuitt*, 393 Mass. at 806-807. None of these has been shown to be the case here. It is of some relevance in assessing the defendant's argument on appeal that, as we discuss in relation to the next point, Ms. Quinlan provided effective assistance at trial. See *Commonwealth* v. *Moran*, 17 Mass. App. Ct. at 206-207 & n.3. See also *Morris* v. *Slappy*, 461 U.S. 1, 10-12 (1983).

2. *The claim of ineffective assistance of counsel.* Ms. Quinlan conducted a thorough and vigorous defense at trial. The verdicts were attributable not to any ineffectiveness on her part but to the compelling facts presented to the jury. Alleged trial errors pointed to in the defendant's appellate brief reflect either tactical differences suggested with the benefit of hindsight, or nitpicking. The defendant was not deprived of an otherwise available, material or substantial defense. See *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974); *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 & n.10 (1977).

Apart from alleged trial errors, the defendant points out that Ms. Quinlan failed to file pretrial motions to dismiss the indictments for trafficking in cocaine and for the offenses against

Pizzi. "It is the general rule that a court should not inquire into the adequacy or competency of the evidence upon which an indictment is based." *Commonwealth* v. *Salman*, 387 Mass. 160, 166 (1982). If the integrity of the grand jury process is not challenged, then the defendant may have the indictments dismissed only if the evidence presented by the Commonwealth to the grand jury failed to meet the test of probable cause to arrest. See *Commonwealth* v. *O'Dell*, 392 Mass. 445, 450-452 (1984). This standard was met, and Ms. Quinlan may not be faulted for not filing what would have been futile motions.

As to each indictment, the grand jury could properly consider all of the evidence presented on the related incidents. On the cocaine trafficking charge, evidence was presented to the grand jury that Makarski took the shoe box and hid it and that the defendant was so desperate to retrieve it that he was willing to kill for it. Although Makarski refused to testify directly that she saw the cocaine, her hearsay statements to the police, properly considered by the grand jury, see *Commonwealth* v. *Gibson*, 368 Mass. 518, 525 (1975), revealed that she knew the box contained cocaine and that she had seen the defendant holding some of the contents of the box. The grand jury were told about the discovery, four and one-half days after the beatings, of the large amount of cocaine in a blood-stained bag near Makarski's home. It was a reasonable inference, Makarski having escaped, that the defendant feared being apprehended with the cocaine and therefore chose to hide it in the woods instead of bringing it home with him. The defendant was arrested within hours of the time he would have left the bag in the woods. Thus, even if he may have intended to do so, he was unable to retrieve it. The four and one-half day period which intervened between the beatings and the discovery of the cocaine, relied upon by the defendant in his argument to show a lack of connection between the defendant and the bag, therefore is not necessarily suggestive of his innocence. Finally, the grand jury were told that the defendant occasionally made calls to Atlanta in Makarski's presence and that he spoke to Makarski about getting an apartment in the Atlanta area. The yellow bag had a Georgia logo, which, therefore, was a link

to the defendant, even if not a strong one. The evidence, taken as a whole, was sufficiently probative of the defendant's guilt of the trafficking charge to authorize the indictment. See *Commonwealth* v. *Brien*, 19 Mass. App. Ct. 914 (1984). Compare *Commonwealth* v. *McShan*, 15 Mass. App. Ct. 921 (1983). It is true that a police officer may have strayed into theorizing in the course of his testimony before the grand jury. As mentioned earlier, however, the competence of that evidence is not a matter for us properly to consider. See *Commonwealth* v. *Salman*, 387 Mass. at 166.

The weakness pointed to in the evidence supporting the indictments for the crimes against Pizzi is her inability to identify the defendant as her attacker. On all the evidence of the related incidents presented to the grand jury, however, there was ample circumstantial evidence of the defendant's identity.

3. *The denial of the motions for required findings of not guilty.* There was sufficient evidence of the defendant's guilt of trafficking in cocaine to support the jury's verdict. The evidence at trial differed slightly from the evidence before the grand jury. The box was taken from a bed used by the defendant. Makarski, familiar with the defendant's habits, believed the box was the defendant's and that it contained cocaine. The defendant acted in a desperate manner to retrieve the box, beating Pizzi and leaving her for dead and beating Makarski. Makarski told the defendant where the box was. She saw him soon afterwards with the plastic bag containing cocaine. The blood-stained bag was later found near Makarski's apartment. The bag contained cocaine in a quantity far in excess of an amount reasonable for personal use. The defendant exhibited consciousness of guilt upon his arrest. The evidence warranted findings that the defendant knowingly possessed the drug with the intent to distribute it. See *Commonwealth* v. *Bongarzone*, 390 Mass. 326, 349 (1983). Contrast *Commonwealth* v. *Williams*, 3 Mass. App. Ct. 370, 371 (1975); *Commonwealth* v. *Duffy*, 4 Mass. App. Ct. 655, 660 (1976); *Commonwealth* v. *Deagle*, 10 Mass. App. Ct. 563, 566-568 (1980). There was considerably more here than conjecture and piling inference upon inference. See *Commonwealth* v. *Mazza*, 399 Mass. 395, 399 (1987).

The required finding argument with regard to the Pizzi offenses is altogether lacking in merit. To dispose of the defendant's contention, we need mention only a portion of the Commonwealth's evidence. Pizzi identified Matthew Fogarty as having been present; the defendant was in Matthew Fogarty's company, with a shotgun cradled across his stomach, when he was arrested just hours after the beating. Pizzi's assailant questioned her about Makarski and referred to the stolen box he wanted returned. The defendant, shortly afterwards, told Makarski he had just killed her friend. The note on Makarski's door used the name "Irene," Pizzi's first name. The motion for required findings of not guilty was properly denied.

4. *The denial of the motion to sever the indictments.* The seven indictments on which the defendant was convicted related to the two beating incidents and the discovery of the cocaine. The defendant sought to have the indictments severed so that he could be tried separately on the cocaine charge and also to receive separate trials relating to the offenses against each of the two victims. After a pretrial hearing, the trial judge denied the motion. The defendant claims on appeal that the denial of the motion was prejudicial error, as the jury were influenced by the cumulative effect of the evidence as to the separate offenses which related to other bad acts of the defendant.

"The decision whether to sever indictments lies within the sound discretion of the trial judge. *Commonwealth* v. *Sylvester,* 388 Mass. 749, 754 (1983). *Commonwealth* v. *Gallison,* 383 Mass. 659, 671 (1981). *Commonwealth* v. *Jervis,* 368 Mass. 638, 645 (1975), and cases cited. Joinder is permitted if the offenses constitute a single line of conduct, grow out of essentially one transaction, and would be proved by substantially the same evidence. See *Commonwealth* v. *Blow,* 362 Mass. 196, 200 (1972)." *Commonwealth* v. *Helfant,* 398 Mass. 214, 230 (1986). It is a defendant's burden to show that joinder of charges in one trial prejudiced his right to receive a fair trial. *Ibid.* Showing the greater likelihood of an acquittal if tried separately, however, is not enough to meet that burden. See *Commonwealth* v. *Gallison,* 383 Mass. at 672; *Commonwealth* v. *Gordon,* 389 Mass. 351, 357-358 (1983).

We think the defendant has failed to sustain his burden of showing that the denial of the motion to sever in the circumstances of this case deprived him of a fair trial. The offenses were closely related in time and location and consisted of a single line of conduct. As in *Commonwealth* v. *Helfant*, 398 Mass. at 230, evidence at any one of the separate trials sought by the defendant would have been incomprehensible without evidence of the other related events giving rise to the other indictments. Thus, separate trials would have been largely duplicative of each other, causing harm to "the interests of the court, the Commonwealth, and the public." *Id.* at 231.

5. *Evidentiary rulings.* The defendant objected unsuccessfully to Makarski's testimony that she used cocaine with the defendant a few days before the beating. We need not decide whether the ruling was erroneous, however, because other evidence of the defendant's cocaine use came in without objection through a defense witness, Anne Fogarty. Any error, therefore, was harmless.

It was altogether proper for the judge to allow in testimony that at 6:00 A.M., a few hours after the beatings, the defendant was asleep cradling a rifle. The evidence was relevant to consciousness of guilt. See *Commonwealth* v. *Montecalvo*, 367 Mass. 46, 52 (1975).

*Judgments affirmed.*