## COMMONWEALTH *vs.* CASSIUS CHAVIS.

Worcester. March 2, 1993. - July 8, 1993.

Present: LIACOS. C.J., NOLAN, LYNCH, O'CONNOR, & GREANEY. JJ.

*Controlled Substances. Statute,* Construction. *Practice, Criminal,* Assistance of counsel, Judicial discretion, Argument by prosecutor.

A criminal defendant's previous conviction of possession of marihuana with intent to distribute could properly form the basis for his conviction of distribution of cocaine under an indictment that alleged a second or subsequent offense, in violation of G. L. c. 94C, § 32A. [705-709]

A judge acted within his discretion in denying a criminal defendant's motion, presented on the day of trial, seeking discharge of his attorney. [710-712]

At a criminal trial, the prosecutor's closing argument made a fair response to an attack on the credibility of a government witness, and neither vouched for the credibility of the witness nor asserted the prosecutor's opinion as to the defendant's guilt. [712-714]

INDICTMENT found and returned in the Superior Court Department on July 18, 1990.

The case was tried before *Herbert F. Travers, Jr.,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Joseph A. Nicastro* for the defendant.

*William E. Loughlin,* Assistant District Attorney, for the Commonwealth.

LIACOS, C.J. On February 6, 1991, a jury convicted the defendant, Cassius Chavis, of distribution of cocaine (second or subsequent offense) in violation of G. L. c. 94C, § 32A (1990 ed.). On appeal, the defendant raises three claims of error which he argues warrant the reversal of his conviction.[1]

---

[1] In the alternative, the defendant requests that we remand the case for resentencing.

First, the defendant contends that the trial judge erred when he refused to dismiss the portion of the indictment that alleged a second or subsequent offense. Second, the defendant argues that the judge erred when he denied the defendant's motion to discharge his trial counsel on the day of trial. Third, the defendant claims that the prosecutor made impermissible and prejudicial comments in his closing argument. We affirm.[2]

We summarize the evidence presented at trial by the Commonwealth.[3] On November 4, 1989, Officer Frank Lahey of the Worcester police department carried out an undercover assignment for that department's drug unit. Part of Lahey's mission was to make contact with three African-American males who Leahy's superior officer said would be standing by a defunct diner. Lahey, who had previously patrolled the area as a uniformed officer, disguised his appearance with long hair, a beard, and an earring. At about 10 P.M., Lahey approached the three individuals whom his superior officer had described. One of these men was the defendant. As Lahey drew near, the defendant said: "Hey, what's up, man? What do you need?" Lahey replied that he needed "a half," the street jargon for one-half gram of cocaine.

The defendant did not proceed with the transaction immediately. Rather, the defendant expressed concern that Lahey might be an undercover police officer, and he requested that Lahey come to the side of the diner and undergo an inspection. Lahey complied, and the defendant satisfied himself that Lahey did not carry a gun, wear a badge, or display any other sign of authority.

---

[2]The defendant initially filed a notice of appeal on February 11, 1991. On March 6, 1992, the Appeals Court issued a notice of dismissal of the defendant's appeal for lack of prosecution. The defendant subsequently moved for an extension of time within which to file a brief and record appendix. The Appeals Court allowed this motion, and we transferred the case to this court on our own initiative.

[3]The defendant did not testify in his defense nor did he call any witnesses.

Lahey then waited while the defendant went to a nearby night club. Shortly thereafter, the defendant returned and asked Lahey to follow him to the night club. The defendant indicated that one-half gram of cocaine would cost $50, and Lahey supplied the money. Inside the night club, the defendant engaged two men in conversation while Lahey waited by the bar. Lahey observed the defendant and one of these individuals go into the men's room. The defendant returned, and he and Lahey left the night club together, returning to the diner.

There, the defendant handed Lahey a plastic bag containing a white substance. Based on his training and experience, Lahey concluded that the bag appeared to contain cocaine. Lahey asked the defendant whether similar transactions could be arranged in the future. The defendant responded affirmatively and indicated that he could be identified by his gold chain.[4]

At the defendant's trial, the substance which he sold to Lahey was introduced as evidence together with a report from the drugs of abuse laboratory of the University of Massachusetts Medical Center. This report identified the substance as being .35 gram of cocaine, a class B controlled substance. G. L. c. 94C, § 31 (1990 ed.).

1. *The Defendant's Statutory Claim.*

Prior to trial, the defendant moved for dismissal of the portion of the indictment that alleged a second or subsequent offense. The defendant conceded that he had been convicted in 1987 of possession of marihuana (a class D controlled substance) with intent to distribute. The defendant, however, argued that this conviction did not trigger the second or subsequent offender provisions of G. L. c. 94C, § 32A, because marihuana does not belong to the same class of controlled

---

[4]Shortly thereafter, Lahey reported to his superior officer that he thought he had made a purchase of cocaine. Lahey also informed Officer Paul Gaffney of the Worcester police department, who previously had arrested the defendant, of the transaction. At Lahey's behest, Gaffney went to the area where Lahey said the defendant stood, and identified the defendant.

substances as cocaine. The judge stated that he would rule on this motion if and when the jury returned a verdict on the underlying indictment of distribution of cocaine. After the jury found the defendant guilty, the judge rejected the defendant's statutory argument and sentenced him as a second or subsequent offender. The defendant now argues that the judge's decision was erroneous.[5]

Section 31 of c. 94C establishes five classes of controlled substances. Criminal penalties for unlawful use of such substances are set forth in §§ 32-32D of c. 94C. Each individual section addresses one particular class of controlled substances and mandates separate penalties for first and repeat offenders.[6] Section 32A governs offenses involving class B controlled substances. Paragraph (*b*) of this section, which governs second or subsequent offenses, states:

> "Any person *convicted of violating this section* after one or more prior convictions of manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute or dispense *a controlled substance as defined by section thirty-one of this chapter* under this or any prior law of this jurisdiction or of any other offense of any other jurisdiction, federal, state, or territorial, which is the same as or necessarily includes the elements of *said offense* shall be punished by a term of

---

[5]The defendant also argues that the judge erroneously denied his motion for a required finding of not guilty with respect to the second or subsequent offender portion of the indictment. This argument is misplaced because the defendant's prior conviction was not part of the crime for which he stood trial. Rather, that conviction pertained solely to the issue of the defendant's punishment. See *Commonwealth* v. *Murphy*, 389 Mass. 316, 320-321 (1983). While the defendant was entitled to a separate trial on the issue whether he had been convicted of a prior offense, G. L. c. 278, § 11A (1990 ed.), the defendant stipulated to all material facts relating to such offense.

[6]The controlled substances listed in G. L. c. 94C, § 31 (1990 ed.), also form the basis of offenses set forth in sections that are irrelevant to our analysis today. See, e.g., G. L. c. 94C, § 32F (1990 ed.) (concerning manufacture, distribution, dispensing or possession with intent to manufacture of controlled substances in Classes A to C to minors).

imprisonment in the state prison for not less than three years nor more than ten years" (emphasis supplied).

The defendant argues that the words "said offense" refer back to the words "this section," thereby confining second or subsequent offender status to those defendants convicted of a prior violation involving a class B controlled substance. The defendant points out that §§ 32, 32B, 32C, and 32D contain second or subsequent offender provisions with language identical to that of § 32A (*b*). The defendant reasons that, under the trial judge's construction of this language, a violation of any of those sections may form the basis of an enhanced sentence pursuant to the second or subsequent offender provisions of another section. This result, the defendant argues, is "illogical" because the penalties imposed on repeat offenders vary from section to section, thereby making the severity of a defendant's punishment contingent on which offense he or she committed first.[7] At best, the defendant concludes, the statute is ambiguous and should be construed in the light most favorable to him.

Under well-established due process principles, "[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes." *United States* v. *Batchelder*, 442 U.S. 114, 123 (1979), quoting *Lanzetta* v. *New Jersey*, 306 U.S. 451, 453 (1939). In recognition of this doctrine, we follow a canon of statutory interpretation whereby criminal statutes are construed strictly against the Commonwealth. See *Commonwealth* v. *Gagnon*, 387 Mass. 567, 569, modified on other grounds, 387 Mass. 768 (1982); *Commonwealth* v. *Clinton*, 374 Mass. 719, 721 (1978). We have explained, however, that "this maxim is a guide for

---

[7]The defendant illustrates his argument with the following example: A defendant with a conviction involving a class E substance who is subsequently convicted of an offense involving a class B substance will receive a mandatory minimum of three years in prison. Should the same defendant begin his or her criminal history with a violation involving a class B substance, and then be convicted of an offense involving a class E substance, the defendant may be punished by not more than one and one-half years in prison.

resolving ambiguity, rather than a rigid requirement that we interpret each statute in the manner most favorable to defendants." *Gagnon, supra,* quoting *Simon* v. *Solomon,* 385 Mass. 91, 102-103 (1982).

Where the legislative purpose is expressed in clear statutory language, we must construe the statute in accordance with its terms and need not apply the rule of lenity on which the defendant relies. See *Commonwealth* v. *Roucoulet,* 413 Mass. 647, 652 (1992). Cf. *Commonwealth* v. *Alvarez,* 413 Mass. 224, 232-233 (1992) (where Legislature unambiguously authorizes consecutive sentences under separate criminal statutes, courts will not apply principle of statutory construction resolving question of multiple punishments in favor of defendant). In the present case, § 32A (*b*) plainly states that a second or subsequent offender is a person who violates this section following a conviction that involved "a controlled substance as defined by section thirty-one of this chapter." As described above, § 31 lists all the controlled substances that may form the basis of a prosecution under §§ 32-32D. It follows that a conviction pursuant to any of these sections triggers the second or subsequent offender provisions of § 32A (*b*).

The words "said offense," on which the defendant bases his claim, do not refer to "this section." The phrase, "which is the same as or necessarily includes the elements of said offense," follows the phrase, "any offense of any other jurisdiction, federal, state, or territorial." This phrase, in turn, appears immediately after the language providing that a repeat offender is a person who previously committed an offense involving a controlled substance listed in § 31. The words "said offense" clearly link these two provisions; their function is to indicate that an out-of-State offense which sufficiently resembles an offense involving a controlled substance listed in § 31 ("said offense") may form the basis of a prosecution pursuant to the second or subsequent offender provisions of § 32A (*b*).

The history of § 32A also reveals that the Legislature intended such construction to be given to the statute. Section

32A (*b*) formerly provided: "A person convicted of violating this section after one or more prior convictions of *this offense* or of any offense of any other jurisdiction . . . which is the same as or necessarily includes the elements of said section, shall, upon conviction of a violation of said section, be punished . . ." (emphasis supplied). St. 1980, c. 436, § 4. In *Commonwealth* v. *Burgos*, 390 Mass. 763 (1984), we construed language then found in § 32 (*b*) to extend second or subsequent offender status to defendants with prior convictions involving the class of controlled substances covered by that section.[8] Under the prior language of § 32A and our construction of such language, the defendant's argument in the present case would have carried the day.

The Legislature, however, has replaced the words "this offense" with the phrase "manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute, or dispense a controlled substance *as defined by section thirty-one of this chapter*" (emphasis added). See St. 1982, c. 650, § 7. Had the Legislature intended to preserve the status quo, it would not have revised the statutory language so substantially. See *District Attorney for the N. Dist.* v. *Lowell Div. of the District Court Dep't*, 402 Mass. 511, 514 (1988). Moreover, we presume that the Legislature does not intend "to enact a barren and ineffective provision." *Insurance Rating Bd.* v. *Commissioner of Ins.*, 356 Mass. 184, 189 (1969). To adopt the defendant's reading of the amended version of § 32A (*b*) essentially would nullify the Legislature's revision of the statute.

Therefore, we hold that the judge did not err when he sentenced the defendant as a second or subsequent offender.[9]

---

[8] The version of § 32 (*b*) that we construed in *Commonwealth* v. *Burgos*, 390 Mass. 763 (1984), appeared in St. 1980, c. 436, § 4, and subsequently was rewritten to include language identical to that of the current version of G. L. c. 94C, § 32A (*b*). See St. 1982, c. 650, § 6.

[9] We disagree with the defendant's argument that this conclusion will produce inconsistencies in implementing c. 94C. The disparities in sentencing to which the defendant has pointed, see note 7 and accompanying text, *supra*, are the result of the different penalties imposed on both first and repeat offenders depending on which class of controlled substances their

## 2. *The Oral Pro Se Motion to Discharge Counsel.*

On the day of trial, prior to jury empanelment, defense counsel moved to withdraw from the case. Counsel explained that, although he was prepared for trial, there had been "somewhat of a breakdown in the attorney-client relationship" and the defendant wanted to discharge him. In turn, the defendant stated that he felt he did not have a sufficient opportunity to plan his defense with counsel. The defendant also contended that his counsel should have moved sooner for dismissal of the portion of the indictment alleging a second or subsequent offense. Finally, the defendant told the judge that his counsel should have prevented the grand jury from hearing evidence of his prior conviction of possession of marihuana with intent to distribute so as to avoid any adverse inference with respect to the alleged cocaine offense.[10]

The judge asked defense counsel whether he was prepared to try the case. Counsel responded affirmatively, and the judge proceeded to deny what he characterized as the defendant's "oral pro se motion to discharge counsel." The defendant now argues that the denial of this motion violated his constitutional right to the assistance of counsel.[11]

---

offenses involve. Such disparate sentences embody the legislative judgment differentiating certain classes of controlled substances as more detrimental to the mind or the body than others. See generally G.F. Uelmen & V.G. Haddox, Drug Abuse and the Law 24-124 (1974). Similarly, the imposition of enhanced punishment on a defendant whose prior conviction carries less severe penalties reflects the legislative decision to penalize those defendants whose criminal activities "escalate" to a controlled substance deemed more harmful than that which formed the basis of the defendant's prior conviction.

In light of the clear legislative mandate, we are bound to follow the statute. Absent a constitutional challenge, we must defer to the Legislature's traditional power to determine which acts are criminal and how they should be punished. See *Commonwealth* v. *Dane Entertainment Servs., Inc.*, 19 Mass. App. Ct. 573, 579 (1985), *S.C.*, 397 Mass. 197 (1986).

[10]The prosecutor interjected that the grand jurors had not heard of the marihuana conviction until after they voted to indict the defendant for distribution of cocaine.

[11]The Commonwealth construes the defendant's brief to raise the additional argument that trial counsel's performance was constitutionally deficient. We think that the defendant did not raise such contention and con-

In some circumstances, the denial of a motion to discharge counsel and to obtain a continuance may be "so arbitrary as to violate a defendant's right to effective assistance of counsel and to due process of law" (citations omitted). *Commonwealth v. Cavanaugh*, 371 Mass. 46, 51 (1976). Freedom to change counsel, however, is restricted on the commencement of trial. "A motion to discharge counsel, when made on the eve of trial, or on the day on which trial is scheduled to begin, 'is a matter left to the sound discretion of the trial judge.' " *Commonwealth v. Tuitt*, 393 Mass. 801, 804 (1985), quoting *Commonwealth v. Moran*, 388 Mass. 655, 659 (1983). While the judge must allow the defendant to present the reasons that prompted him or her to move to discharge counsel, see *Commonwealth v. Moran, supra*, there is no "mechanical test" to determine whether such a motion should be granted. *Commonwealth v. Dunne*, 394 Mass. 10, 14 (1985). Rather, the "trial judge should balance the movant's need for additional time against the possible inconvenience, increased costs, and prejudice which may be incurred by the opposing party if the motion is granted. He must also give due weight to the interest of the judicial system in avoiding delays which would not measurably contribute to the resolution of a particular controversy." *Cavanaugh, supra* at 51, quoting *Commonwealth v. Gilchrest*, 364 Mass. 272, 276-277 (1973). See *Dunne, supra*, quoting *United States v. Poulack*, 556 F.2d 83, 86 (1st Cir.), cert. denied, 434 U.S. 986 (1977) (trial judge "must blend 'an appreciation of the inevitable difficulties of trial administration with a concern for constitutional protections' ").

---

fined his appellate argument to the issue whether the denial of his motion to discharge counsel violated his right to proceed with the assistance of counsel. In any event, the defendant has made no showing on appeal that trial counsel's performance fell "measurably below that which might be expected from an ordinary fallible lawyer." *Commonwealth v. Saferian*, 366 Mass. 89, 96 (1974), nor has the defendant shown that deficient work by counsel deprived him of "an otherwise available, substantial ground of defence." *Id.*

In the present case, the judge was within his discretion in concluding that the interests of the courts and the public in efficient trial administration were not outweighed by a showing of good cause to support the defendant's motion — such as a conflict of interest, incompetence of counsel, or an irreconcilable breakdown in communication. See *Commonwealth v. Dunne, supra* at 14-15; *Commonwealth v. Moran,* 388 Mass. 655, 659 (1983); *Commonwealth v. Fogarty,* 25 Mass. App. Ct. 693, 698 (1988), *S.C.,* 406 Mass. 103 (1989). The judge gave the defendant a fair opportunity to explain the reasons for his dissatisfaction with trial counsel. Cf. *United States v. Welty,* 674 F.2d 185, 190 (3d Cir. 1982) (new trial ordered where judge did not inquire into motives for defendant's motion to discharge counsel). Having heard the defendant's concern about his attorney's lack of preparation, the judge satisfied himself that defense counsel was ready to proceed with trial. See *Tuitt, supra* at 805. See also *Commonwealth v. Appleby,* 389 Mass. 359, 365-369, cert. denied, 464 U.S. 941 (1983) (no abuse of discretion in denying counsel's motion to withdraw despite defendant's allegation of "complete breakdown" in relationship). Cf. *Cavanaugh, supra* at 48, 51-53 (error to deny continuance where defense counsel stated he was not prepared).

In these circumstances, we conclude that the judge was well within his discretion when he denied the defendant's motion to discharge counsel.[12]

3. *The Prosecutor's Closing Argument.*

The defendant argues that, in his closing argument, the prosecutor improperly vouched for the credibility of a government witness and asserted his own opinion as to the guilt

---

[12]An appellate court will order a new trial on account of a breakdown in the attorney-client relationship only if such breakdown led to an apparently unjust verdict, prevented an adequate defense, or threatened the defendant's right to a fair trial. See *Commonwealth v. Tuitt,* 393 Mass. 801, 806 (1985), and cases cited. The defendant has not set forth, nor has our review of the record revealed, any indication that the lack of communication which might have existed between the defendant and his counsel affected the conduct of the trial or its outcome.

of the defendant. The defendant bases this contention on the prosecutor's assertion that Officer Lahey, who testified to the events described above, "wasn't lying";[13] that Lahey "is doing a difficult job and he's bringing in only the people [whom] he has evidence against"; and that the defendant "is a drug dealer. That's why he's here."

A prosecutor may not assert his or her personal opinion as to the credibility of a witness or the guilt of an accused. See, e.g., *Commonwealth v. Gagnon*, 16 Mass. App. Ct. 110, 114 (1983), *S.C.*, 391 Mass. 869 (1984). See also S.J.C. Rule 3:07, Canon 7, DR 7-106 (C) (4), as appearing in 382 Mass. 787 (1981). However, the prosecutor may comment on evidence developed at trial and draw inferences from such evidence. *Commonwealth v. Bradshaw*, 385 Mass. 244, 275 (1982). In addition, the prosecutor may make a fair response to an attack on the credibility of a government witness. *Commonwealth v. Simmons*, 20 Mass. App. Ct. 366, 371 (1985). See *Commonwealth v. Smith*, 404 Mass. 1, 7 (1989).

In the present case, defense counsel's closing argument sought to convince the jury that Lahey fabricated the events to which he testified. Counsel implied that Lahey would not arrest the defendant (whom counsel characterized as a "little middleman") while letting go of the man who apparently supplied cocaine to the defendant in the night club (whom counsel called "the dealer"). Counsel also emphasized that Lahey's work as an undercover officer evinced an ability to lie and to deceive others.[14] Finally, counsel argued that it was improbable that the defendant would sell cocaine to a man who previously had patrolled the area as a uniformed police officer.

---

[13]The statement was: "But when this man [the defendant] asked him [Lahey], 'What do you want, man?' and Frank Lahey responded, 'A half,' he wasn't lying."

[14]Counsel stated: "We do know one thing about Officer Lahey. He is willing for the sake of his job to tell a cover story. . . . [T]o do his job correctly, he's got to be able to lie, he's got to be able to make you believe it. That's his job. And he went down into Main/South dressed not the way he usually dresses, and again, the whole idea is to deceive the people that he is coming in contact with. And he is prepared to do that to do his job."

In this context, the prosecutor legitimately could defend the credibility of Lahey by arguing, based on the evidence, that contrary to defense counsel's assertion Lahey told the truth. The prosecutor also could argue that Lahey did not attempt to arrest the "dealer" because he had no evidence against that man; indeed, Lahey testified that he never saw anyone but the defendant in possession of the cocaine that Lahey bought. Finally, the prosecutor's characterization of the defendant as being "a drug dealer" was clearly a permissible inference from Lahey's account of his interaction with the defendant. See *Commonwealth v. Toro*, 395 Mass. 354, 359 (1985). Therefore, we conclude that the prosecutor did not exceed the scope of a permissible closing argument.[15]

In sum, we hold that the judge did not err when he sentenced the defendant as a second or subsequent offender and when he denied the defendant's motion to discharge counsel. We also conclude that the prosecutor made no impermissible comments during his closing argument.

*Judgment affirmed.*

---

[15]We also find no merit to the defendant's contention that the prosecutor's closing argument shifted the burden of proof to the defendant and impermissibly commented on the defendant's exercise of his right to refrain from testifying. The defendant bases this argument in large part on the prosecutor's assertion that Lahey had no motive to lie. As explained above, this assertion amounted to no more than a permissible response to defense counsel's closing argument. We think that it was highly unlikely that the "jury would be led by the remark[s] to an invidious reflection about the defendant's silence." *Commonwealth v. Manago*, 26 Mass. App. Ct. 262, 266 (1988).